2007-NMSC-007

152 P.3d 828

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Leonardo GALLEGOS, Defendant–Respondent.**

No. 29,538.

Supreme Court of New Mexico.

Feb. 23, 2007.

Gary K. King, Attorney General, Steven S Suttle, Assistant Attorney General, Santa Fe, NM, for Petitioner.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

CHÁVEZ, Chief Justice.

{1} Having granted the parties' motions for rehearing, we withdraw our opinion filed on February 1, 2007 and substitute the following in its place.

{2} Arguing that the trial court abused its discretion when it denied his motion to sever charges related to two victims, Defendant Leonardo Gallegos appeals his convictions of one count of criminal sexual contact of a minor ("CSCM") and two counts of aggravated indecent exposure. The Court of Appeals reversed Gallegos's convictions after determining that Gallegos was prejudiced by the trial court's denial of his motion to sever.

*State v. Gallegos,* 2005–NMCA–142, ¶¶ 32–33, 41, 138 N.M. 673, 125 P.3d 652. On certiorari, the State contends that Gallegos was not prejudiced because the evidence pertaining to each victim would have been cross-admissible had separate trials occurred.

{3} We conclude that, because the evidence would not have been cross-admissible at separate trials, the trial court abused its discretion in failing to sever the charges. Nonetheless, we reverse the Court of Appeals's reversal of Gallegos's two convictions of aggravated indecent exposure. We do so because we do not believe that, under the circumstances, the jury misused the CSCM evidence to convict Gallegos of indecent exposure. At the same time, however, we affirm the Court of Appeals's reversal of Gallegos's conviction of CSCM. Under the circumstances of this case, we are not confident the jury did not misuse the evidence pertaining to another victim to convict Gallegos of CSCM.

## I. BACKGROUND

{4} Gallegos went to trial on a single indictment charging twelve counts stemming from incidents that occurred while he was a guard at the Youth Diagnostic and Detention Center ("YDDC"). In seven of those counts, the State alleged that Gallegos used his position of authority to commit CSCM against a female YDDC resident, Jamie S. At trial, Jamie S. testified that her encounters with Gallegos were consensual, that Gallegos did not use his authority to coerce her, and that out of the seven alleged incidents she only objected once-when Gallegos placed her hand on his penis. Because of this, the trial court granted Gallegos's motion for a directed verdict on six of the seven counts pertaining to Jamie S. Gallegos was convicted of the remaining count of CSCM.

{5} The other five counts pertained to incidents involving Ursula C., another female YDDC resident. Gallegos was charged with three counts of aggravated indecent exposure for allegedly exposing himself and masturbating in front of Ursula C. while she was housed in a solitary observation room. At the time of the incidents, Gallegos was in a

188

control room separated from Ursula C. by a glass window. Gallegos was also charged with two counts of contributing to the delinquency of a minor for allegedly asking Ursula C. to disrobe on two different occasions.

{6} The trial court dismissed one of the contributing to the delinquency counts because only one was supported by the evidence adduced at trial. Gallegos was ultimately convicted of two of the three indecent exposure counts submitted to the jury, but acquitted of the remaining contributing to the delinquency count. The trial court consecutively sentenced Gallegos for a total of six years of incarceration—three years for CSCM and eighteen months each for the two indecent exposure convictions—conditionally suspended on five years of supervised probation.

{7} Before trial, Gallegos filed a motion to sever the counts pertaining to Jamie S. and Ursula C. Gallegos's main argument to the trial court was that prejudice would result from a joint trial of the offenses because evidence pertaining to each victim would not be cross-admissible as "other crimes" if the trials were held separately. The State responded that no prejudice would result because evidence pertaining to each victim would be cross-admissible at separate trials to help the jury in each trial "understand the defendant's motive, intent, preparation, plan, and identity." Concluding that the evidence pertaining to both victims would be cross-admissible at separate trials, the trial court denied the motion. The trial court based its ruling on its belief that Gallegos used his position as a guard at YDDC as an opportunity to prey on girls for sexual purposes. Thus, according to the trial court, evidence pertaining to each victim would be cross-admissible at separate trials to show Gallegos's "continuing scheme or plan" under Rule 11–404(B) NMRA.

{8} The Court of Appeals reversed Gallegos's convictions and remanded for two new trials. *Gallegos*, 2005–NMCA–142, ¶ 1, 138 N.M. 673, 125 P.3d 652. The Court concluded that if separate trials were held, evidence specifically pertaining to Jamie S. and Ursula C. would not be cross-admissible at the other trial under Rule 11–404(B)'s "common plan

or scheme" exception. *Id.* ¶¶ 24–27. Further, according to the Court, "[w]hen evidence of prior bad acts evidence is admitted in violation of Rule 11–404(B)" at a trial of joined offenses, "'prejudice is established when there are convictions' because 'we will not speculate that the erroneous admission of other crimes did not cause a compromise verdict of guilty of some charges and not guilty of others.'" *Id.* ¶ 32 (quoting *State v. Jones*, 120 N.M. 185, 190, 899 P.2d 1139, 1144 (Ct.App.1995)). However, even though the State did not raise the issue, the Court went on to "assume, without deciding," that the separate evidence would be cross-admissible under Rule 11–404(B)'s "opportunity" exception. *Id.* ¶ 30. After conducting an analysis pursuant to Rule 11–403 NMRA, the Court of Appeals determined that evidence pertaining to each victim would, nonetheless, not be cross-admissible at separate trials due to its overwhelming prejudicial impact and limited probative value. *Id.* ¶¶ 30–31. Finally, assuming the evidence to be admissible at separate trials under Rule 11–404(B), but not under Rule 11–403, the Court conducted a harmless error analysis. The Court of Appeals ultimately concluded that Gallegos was prejudiced by a joint trial because there was a reasonable probability that the erroneously combined evidence contributed to his three convictions. *See id.* ¶ 33.

## II. DISCUSSION

### A. Even Though Offenses Are Properly Joined, A Trial Court Abuses Its Discretion in Failing to Sever When the Defendant Is Prejudiced at the Time the Motion Is Made

{9} In its brief-in-chief, the State appears to argue that the trial court did not abuse its discretion in rejecting Gallegos's motion to sever because joinder of the offenses was proper. We agree that joinder was proper as an initial matter. However, this does not alter the fact that a trial court may abuse its discretion in failing to sever charges. The issue of joinder is not so inextricably linked with the issue of severance such that a prosecutor's proper exercise of the former means that a court never abuses its discretion when it refuses to exercise the latter.

{10} Regarding joinder of offenses, our rules provide:

Two or more offenses *shall* be joined in one complaint, indictment or information with each offense stated in a separate count, if the offenses, whether felonies or misdemeanors or both:

(1) are of the same or similar character, even if not part of a single scheme or plan; or

(2) are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan.

Rule 5–203(A) NMRA (emphasis added). It is important to recognize that Rule 5–203(A) is not a discretionary or permissive rule; it demands that the State join certain charges. At common law, whether charges should be joined in the same indictment "was a matter of prudence and discretion which ... rest[ed] with the judges to exercise." *State v. Compton*, 57 N.M. 227, 240–41, 257 P.2d 915, 924 (1953) (quoted authority omitted). Our rule as originally promulgated was discretionary and reflected the common law. *See* NMSA 1953, § 41–23–10 (1972) (providing that "[t]wo ... or more offenses may be joined"); *see also* Fed.R.Crim.P. 8(a) ("The indictment or information may charge a defendant in separate counts with 2 or more offenses. . . ."). The original rule was based on the 1968 draft of the American Bar Association Standards Relating to Joinder and Severance, Section 1.1. Rule 5–203 NMRA committee commentary; *see also State v. Gregory*, 66 N.J. 510, 333 A.2d 257, 262 n. 4 (1975) (noting that the ABA rule "does not require procedural joinder of the charges by the prosecuting attorney"). The primary focus of such a discretionary rule is the promotion of judicial efficiency. *See* 1A Charles Alan Wright, *Federal Practice and Procedure* § 141, at 5 (3d ed.1999).

{11} We recognized over thirty years ago, however, that requiring prosecutors to "get[ ] their facts straight, their theories clearly in mind and trying all charges together" has the salutary effect of avoiding prejudice to the defendant. *State v. Tijerina*, 86 N.M. 31, 36, 519 P.2d 127, 132 (1973). Around the same time as *Tijerina*, and based on this same concern, numerous other jurisdictions began requiring prosecutors to charge together all crimes arising from a defendant's conduct or series of acts. This was done either legislatively, through interpretation of a particular state's constitution or statute, or through a court's general supervisory power over rules of criminal procedure. Allan D. Vestal & Douglas J. Gilbert, *Preclusion of Duplicative Prosecutions: A Developing Mosaic,* 47 Mo. L.Rev. 1, 15–22 (1982); *see also* Susan R. Klein, *Double Jeopardy's Demise,* 88 Cal. L. Rev 1001, 1031 n. 104 (2000) (book review) (noting that "[a] number of advisory groups have suggested mandatory joinder of all offenses arising from the same transaction as a legislative fix to vexatious prosecutions").

{12} For instance, in 1975 the Supreme Court of New Jersey became "satisfied that the time for the adoption of [compulsory joinder was] well due." *Gregory*, 333 A.2d at 263. The court gave three reasons: (1) "fairness and reasonable expectations" of the defendant; (2) "justice, economy, and convenience"; and (3) "consistent and rational sentencing" of all of a defendant's relevant conduct. *Id.* (quoted authority omitted). *Gregory* recognized that the then-current trend toward mandatory joinder in order to protect a defendant from multiple prosecutions was largely motivated by the American Law Institute's Model Penal Code. *Id.* at 261.

{13} The Model Penal Code requires joinder of "offenses based on the same conduct or arising from the same criminal episode" when the prosecutor knows of such offenses and when a court has jurisdiction over them. Model Penal Code § 1.07(2); *see also id.* § 1.07 explanatory note for sections 1.07–1.11 ("In prohibiting multiple trials in many situations where multiple convictions are permissible, the section thus imposes compulsory joinder."). The court in *Gregory* was also persuaded by Justice Brennan's concurrence in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), calling for the adoption of a "same transaction" test for purposes of double jeopardy. *Gregory*, 333 A.2d at 261; *see Ashe*, 397 U.S. at 453–54, 90 S.Ct. 1189 (Brennan, J., concurring) ("In my

view, the Double Jeopardy Clause requires the prosecution . . . to join at one trial all the charges against a defendant that grow out of a single criminal act, occurrence, episode, or transaction."). Thus, although the court in *Gregory* did not rest its decision on constitutional double jeopardy grounds, the court exercised its "administrative and procedural powers" to formally adopt section 1.07(2) of the Model Penal Code. *Gregory*, 333 A.2d at 261, 263.

{14} As New Jersey did in *Gregory*, we exercised our supervisory powers in 1979 to change the rule regarding joinder of offenses from permissive to mandatory. Our 1979 order states: "When a person is charged with more than one crime and the crimes can be incorporated in one information or indictment in separate counts, this practice *shall* be followed." Rule 5–203 NMRA committee commentary (emphasis added). Our order in 1979 may have resulted from our decision in *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975), where we formally rejected the "same transaction" test espoused by Justice Brennan in *Ashe* as a constitutional rule. *Id.* at 335–36, 540 P.2d 813, 540 P.2d at 815–16; *see State v. Manzanares*, 100 N.M. 621, 624, 674 P.2d 511, 514 (1983). In *Tanton*, however, we adopted as "judicial policy" our distaste for "piecemeal prosecutions" as described two years earlier in *Tijerina*. *Tanton*, 88 N.M. at 336, 540 P.2d at 816. Thus, in order to avoid "disorderly criminal procedures" that "threaten the existence of our judicial system [and] risk . . . prejudice to the accused," *Tijerina*, 86 N.M. at 36, 519 P.2d at 132, we require the State to join those offenses as laid out in Rule 5–203(A).

{15} In this case, pursuant to the requirements of Rule 5–203(A), the State appropriately and necessarily charged the offenses related to Jamie S. and those related to Ursula C. in the same indictment. In both cases, Gallegos engaged in inappropriate sexual activities with minors in his care as a guard at YDDC. At the very least, Gallegos's acts towards Jamie S. and Ursula C. were "of the same or similar character" regardless of whether they were "part of a single scheme or plan." *See* Rule 5–203(A)(1) NMRA.

{16} However, even though offenses are properly joined, a trial court abuses its discretion in failing to sever when there is prejudice to the accused. We emphasize that our rules provide for severance when it appears that there "*is* prejudice[ ] by a joinder." Rule 5–203(C) NMRA. Thus, by its very nature, Rule 5–203(C) does not come into play unless and until there is a proper joinder pursuant to Rule 5–203(A). *See* 1A Wright, *supra*, § 221, at 465 (stating that the federal rule for severance is applicable "only if the original joinder was proper"); *see also, e.g., State v. Griffin*, 116 N.M. 689, 693, 866 P.2d 1156, 1160 (1993) (determining first that joinder was proper before ruling on the trial court's refusal to sever); *State v. McCallum*, 87 N.M. 459, 461, 535 P.2d 1085, 1087 (Ct. App.1975) (same).

{17} Admittedly, we have not always made this distinction clear. For example, in a case where the defendant argued that he was prejudiced when the trial court refused to sever his possession of drug paraphernalia charge from his murder trial, we stated that our review of whether charges are "properly joined" is narrow. *State v. Duffy*, 1998–NMSC–014, ¶ 42, 126 N.M. 132, 967 P.2d 807. We concluded in *Duffy* that, "even if the joinder of charges was an abuse of discretion, [the defendant failed to show that] he was prejudiced by a lack of severance." *Id.* ¶ 45. The language in *Duffy* is misleading in that the issue there was entirely whether the trial court abused its discretion in failing to sever the offenses, not whether the offenses were properly joined. Moreover, given that our rule regarding joinder is mandatory, we believe that our review of an improper joinder-or of a failure to properly join defenses-is a question of law to be reviewed de novo. We clarify our language in *Duffy* and hold that simply because offenses are properly joined does not mean that a trial court never abuses its discretion for denying a motion to sever. Similarly, in *State v. Ruiz*, 2001–NMCA–097, ¶ 11, 131 N.M. 241, 34 P.3d 630, the Court of Appeals stated that "even when Rule 5–203(A) is satisfied, charges should be joined only if joinder does not unfairly prejudice either party." Again, we clarify. Charges should be joined *whenever* Rule 5–203(A) is satisfied; if either

party believes it is prejudiced as a result, the proper procedure is to file a motion for severance with the trial court pursuant to Rule 5–203(C).

{18} Even when the trial court abuses its discretion in failing to sever charges, appellate courts will not reverse unless the error actually prejudiced the defendant. In *State v. Gunthorpe*, 81 N.M. 515, 521, 469 P.2d 160, 166 (Ct.App.1970), the Court of Appeals held that "the mere denial of a request for severance is not a basis for reversal unless abuse of discretion and prejudice is shown." More recently, it was said that a trial court's denial of a motion to sever will not be reversed "without a showing of an abuse of discretion, which resulted in prejudice to the accused." *State v. Nguyen*, 1997–NMCA–037, ¶ 5, 123 N.M. 290, 939 P.2d 1098. Furthermore, in a case involving the trial court's failure to sever defendants, we first held that the trial court did not abuse its discretion. *State v. Rondeau*, 89 N.M. 408, 417, 553 P.2d 688, 697 (1976). We then went on to state that, even if the trial court had abused its discretion, we "will not reverse a defendant's conviction if said error is harmless." *Id.* We do not see any reason to review the denial of a motion to sever offenses any differently than a motion to sever defendants.

## B. The Trial Court Abuses Its Discretion in Not Severing Offenses When Evidence Pertaining To Each Charge Would Not Be Cross–Admissible at Separate Trials

{19} As noted above, in ruling on a motion to sever the trial court's job is to determine if, at the time of the motion, the defendant "is prejudiced." Rule 5–203(C) NMRA. If such prejudice exists at the time of the motion, the trial court abuses its discretion in neglecting to sever. A defendant "is prejudiced" in this context if there is an appreciable risk that reversal will be warranted because of a later determination of *actual* prejudice. "A defendant might [actually] be prejudiced if the joinder of offenses permit[s] the jury to hear testimony that would have been otherwise inadmissible in separate trials." *State v. Jacobs*, 2000–

NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127; *Bean v. Calderon*, 163 F.3d 1073, 1084 (9th Cir.1998) (acknowledging "there is a high risk of undue prejudice whenever . . . joinder of counts allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence would otherwise be inadmissible" (quoted authority omitted)). On the other hand, "[c]ross-admissibility of evidence dispels any inference of prejudice." *Jacobs*, 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127.

{20} Our first task, then, is to determine whether evidence separately pertaining to Jamie S. and Ursula C. would have been admissible had Gallegos gone to trial only on the charges pertaining to one of them. If the evidence would have been cross-admissible, then any inference of prejudice is dispelled and our inquiry is over. If the evidence pertaining to each victim would not have been cross-admissible, then the trial court abused its discretion in failing to sever the charges. However, even if the trial court abused its discretion we must consider whether that error actually prejudiced Gallegos at his trial; that is, whether the error was harmless. *See State v. Williams*, 117 N.M. 551, 559, 874 P.2d 12, 20 (1994) (concluding that evidence was inadmissible under Rule 11–404(B), but holding the error harmless). For our first task, we turn to Rule 11–404(B).

{21} Rule 11–404(B) provides:

Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

Rule 11–404(B) NMRA. The nearly universal view is that other-acts evidence, although logically relevant to show that the defendant committed the crime by acting consistently with his or her past conduct, is inadmissible because "the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—

creates a prejudicial effect." *Old Chief v. United States,* 519 U.S. 172, 181, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997) (quoted authority omitted); *see also, e.g., Michelson v. United States,* 335 U.S. 469, 476, 69 S.Ct. 213, 93 L.Ed. 168 (1948) ("The overriding policy of excluding [propensity] evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice."); *Ruiz,* 2001–NMCA–097, ¶ 13, 131 N.M. 241, 34 P.3d 630 ("Rule 11–404(B) is a specialized rule of relevancy that . . . limits the admissibility of evidence that, although relevant, is unfairly prejudicial to the accused."). *But see Williams,* 117 N.M. at 557, 874 P.2d at 18 (stating that other-acts evidence that only goes to propensity is excluded because "such evidence is not probative of the fact that the defendant acted consistently with his past conduct in committing the acts at issue"). We clarify our view that, although logically relevant, evidence of how a person acted on a particular occasion is not legally relevant when it solely shows propensity and should be automatically excluded under Rule 11–404(B) because it is unfairly prejudicial as a matter of law.

{22} Regardless of whether the second sentence of Rule 11–404(B) is read as an exception to a general rule stated in the first sentence, *see State v. Blea,* 101 N.M. 323, 328, 681 P.2d 1100, 1105 (1984), or as a "simple clarifi[cation] that the first sentence does not always exclude other-acts evidence," *State v. Lamure,* 115 N.M. 61, 69, 846 P.2d 1070, 1078 (Ct.App.1992) (Hartz, J., specially concurring), at least four things remain constant. First, the rule prohibits the use of otherwise relevant evidence when its sole purpose or effect is to prove criminal propensity. Second, other-acts evidence may be admissible if it is relevant to an issue besides the inference that the defendant acted in conformity with his or her character. The list of allowable purposes found in the second sentence of Rule 11–404(B) is not exclusive, but is illustrative. *State v. Martinez,* 1999–NMSC–018, ¶ 27, 127 N.M. 207, 979 P.2d 718; *see also State v. Lara,* 109 N.M. 294, 296, 784 P.2d 1037, 1039 (Ct.App.1989). Third, the proponent of the evidence is required to identify and articulate the consequential fact to which the evidence is directed before it is admitted. *State v. Lucero,* 114 N.M. 489, 492, 840 P.2d 1255, 1258 (Ct.App.1992). Finally, even if other-acts evidence is relevant to something besides propensity, such evidence will not be admitted if the probative value related to its permissible purpose is substantially outweighed by the factors enumerated in Rule 11–403. *Williams,* 117 N.M. at 557, 874 P.2d at 18.

{23} Thus, if the evidence relating to Jamie S. and Ursula C. would not have been cross-admissible at separate trials—either because it would not have been relevant to anything other than propensity or because its probative value of a purpose other than propensity would have been substantially outweighed by the factors listed in Rule 11–403—then Gallegos might have been actually prejudiced by going to trial on the joined offenses. *See Jacobs,* 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127; *cf.* 3 Clifford S. Fishman, *Jones on Evidence: Civil and Criminal* § 17:18, at 357 (7th ed. 1998) ("The joinder in one trial of several charges may enable the prosecutor to exploit the very propensity inference that the rule governing extrinsic act evidence is designed to prohibit."). If so, the trial court abused its discretion in failing to sever the charges.

{24} The Court of Appeals focused its analysis on the "plan" and "opportunity" exceptions found in Rule 11–404(B). *Gallegos,* 2005–NMCA–142, ¶¶ 22–31, 138 N.M. 673, 125 P.3d 652. On certiorari, the gravamen of the State's argument is that evidence of Gallegos's actions towards Jamie S. and Ursula C. would be cross-admissible under Rule 11–404(B) at separate trials because the evidence is probative of Gallegos's "lewd and lascivious" disposition. Other than the "lewd and lascivious" route to admissibility, the State generally takes a scattershot approach. For example, the State argues that "the evidence when taken as a whole, clearly showed Defendant's sexual interest in young girls and that he used his position of authority to further his gratification. This is the essence of evidence of plan, opportunity, motive, intent and lack of mistake." Regarding whether the acts would be cross-admissible as evidence of a "plan," the State does at one point

assert that "evidence of the two incidents was also admissible under Rule 11–404(B) because they related to a common scheme or design. The evidence adduced below clearly showed Defendant had a penchant for young girls and for engaging in sexual behavior with or in front of them." Nowhere in its brief, however, does the State specifically argue that the evidence would be cross-admissible at separate trials to show Gallegos's "opportunity."

{25} We reaffirm that it is incumbent upon the proponent of Rule 11–404(B) evidence to identify and articulate the consequential fact to which the evidence is directed. Part of the proponent's responsibility is also to cogently inform the court—whether the trial court or a court on appeal—the rationale for admitting the evidence to prove something other than propensity. In other words, "more is required to sustain a ruling admitting [other-acts] evidence than the incantation of the illustrative exceptions contained in the Rule." *State v. Stevens*, 115 N.J. 289, 558 A.2d 833, 842 (1989). We address the State's "lewd and lascivious" argument first. We then turn to the Court of Appeals's ruling on whether the evidence would be cross-admissible to show Gallegos's "plan" or "opportunity."

### 1. Lewd and Lascivious Disposition

■ {26} The State relies upon *State v. Casaus*, 1996–NMCA–031, 121 N.M. 481, 913 P.2d 669, and *State v. Landers*, 115 N.M. 514, 853 P.2d 1270 (Ct.App.1992), to argue that evidence pertaining to Jamie S. and Ursula C. would be cross-admissible at separate trials to show Gallegos's "lewd and lascivious" disposition. Gallegos notes that the "lewd and lascivious" doctrine was never argued below or ruled on by the trial court or Court of Appeals. Although the State did not raise the "lewd and lascivious" issue below, we will affirm the trial court's decision if it was right for any reason so long as it is not unfair to the appellant for us to do so. *Maralex Res., Inc. v. Gilbreath*, 2003–NMSC–023, ¶ 13, 134 N.M. 308, 76 P.3d 626. In this case, we are persuaded by Gallegos's argument that the evidence would not be cross-admissible as "lewd and lascivious" evidence since the bad acts in question pertained to different victims. *See Landers*, 115 N.M. at 518–19, 853 P.2d at 1274–75 (affirming that the "lewd and lascivious" doctrine can only be used to admit evidence of misconduct involving the same victim for which the defendant is on trial); *see also Williams*, 117 N.M. at 561–62, 874 P.2d at 22–23 (Montgomery, J., specially concurring) (arguing that the "lewd and lascivious" doctrine is simply a euphemism for character evidence and should be rejected).

### 2. Common Scheme or Plan

■ {27} The Court of Appeals correctly held that the evidence pertaining to Jamie S. and Ursula C. would not be cross-admissible at separate trials as probative of Gallegos's "common scheme or plan." *Gallegos*, 2005–NMCA–142, ¶ 27, 138 N.M. 673, 125 P.3d 652. In its opinion, the Court of Appeals distinguished between two theories of admissibility for other-acts evidence purportedly tending to prove a "plan." The first theory uses extrinsic evidence to prove a larger act of which the defendant is charged. *Id.* ¶ 23; *see also* 3 Fishman, *supra*, § 17:44, at 425 (describing use of "common plan or scheme" evidence in situations where "the extrinsic act was committed as preparation for the charged act, or vice versa, or when both the extrinsic and charged acts were committed as preparation for yet another act"). A common example is where evidence that a defendant stole a vehicle used as a getaway car is admitted to prove that the defendant committed the crime of bank robbery. *See, e.g., United States v. Leftwich*, 461 F.2d 586, 589 (3d Cir.1972). Such evidence is logically relevant in two ways. First, it shows that the defendant was more likely to rob the bank because he or she was predisposed to stealing. Second, the other-acts evidence is logically relevant because it tends to show that the defendant was more likely to have robbed the bank because he or she stole a getaway car that was used to facilitate the larger plan or scheme of bank robbery. Although logically relevant in two ways, the getaway car evidence is only legally relevant, thus potentially admissible, because it is probative of the defendant's guilt in a way other than showing propensity.

{28} Under this theory of admissibility, evidence of Gallegos's acts against Ursula C. would not be admissible under Rule 11–404(B) at a separate trial on the charges related to Jamie S. The extrinsic acts of indecent exposure and contributing to the delinquency of a minor were not committed "as preparation for" Gallegos's criminal sexual contact with Jamie S.[1] Nor were the acts committed against both Jamie S. and Ursula C. done "as preparation for yet another act." *See* 3 Fishman, *supra*, § 17:44, at 425. Such evidence would *only* be logically relevant because, in the State's own words, it would tend to show that Gallegos "had a penchant for young girls and for engaging in sexual behavior with or in front of them." In other words, the only logical relevance the extrinsic evidence would have would be to show that Gallegos acted in conformity with his inclination to use his authority to engage in inappropriate sexual behavior with young girls. *See* XI The Oxford English Dictionary 463 (2d ed.1991 reprint) (defining "penchant" as "[a] (strong or habitual) inclination; a favourable bias, bent, liking"). This is pure propensity evidence and is exactly the type of evidence Rule 11–404(B) excludes. Although the State contends that evidence of Gallegos's penchant for engaging in sexual acts with young girls is the "essence" of why the evidence would be cross-admissible at separate trials, it is, in fact, the essence of why it would not be admissible.

{29} The second definition of "common plan or scheme" evidence that the Court of Appeals described is "where the same 'plan' is used repeatedly to commit separate crimes that are markedly similar to the way in which the crime charged was committed." *Gallegos*, 2005–NMCA–142, ¶ 25, 138 N.M. 673, 125 P.3d 652. The Court of Appeals concluded that New Mexico does not read "plan" so broadly and that, even if we did, the evidence would not be cross-admissible because the crimes against Jamie S. and Ursula C. were not "strikingly similar." *Id.* ¶ 26; *see also Jones*, 120 N.M. at 187, 899 P.2d at 1141 (noting that the case law in New Mexico has developed such that "it is now clear that a more detailed analysis needs to

be done than simply comparing superficial similarity"). We agree with the Court of Appeals that the term "plan" in Rule 11–404(B) cannot be used to introduce extrinsic—act evidence based solely on its similarity-no matter how similar—with the charged crime. Thus, we do not consider whether Gallegos's crimes against each girl were "strikingly similar."

{30} It appears that jurisdictions that incorporate such a reading of "plan" into their rules prohibiting propensity evidence do so for one of two reasons. First, this view of "plan" "is a variation on the 'signature crime' theme: extrinsic acts which have several characteristics in common with the charged crime may be admissible to prove identity, even if the similarities do not add up to a unique 'signature.'" 3 Fishman, *supra*, § 17:44, at 425. In New Mexico, however, "character evidence is admitted under Rule [11–]404(B) as evidence of identity only when the strict test for relevance is met. This test requires that the 'pattern and characteristics' of the prior acts must be so distinctive ... to constitute the defendant's signature." *Williams*, 117 N.M. at 558, 874 P.2d at 19 (quoted authority omitted). Using "plan" to prove identity in this manner would undermine our holding in *Williams* regarding the "identity" exception of Rule 11–404(B).

{31} Second, when the issue is whether the crime in fact occurred, and not the identity of the perpetrator (as is the situation in the present case), some jurisdictions allow evidence that the defendant committed acts similar to the crime charged simply because "the existence of a design ... evidenced by a pattern of past behavior is probative." *State v. DeVincentis*, 150 Wash.2d 11, 74 P.3d 119, 123 (2003) (en banc). We are hard pressed to determine how such evidence is probative other than by its tendency to establish that the defendant committed the charged crime because he committed a "strikingly similar" crime in the past. This is propensity evidence pure and simple and, albeit logically relevant, is exactly the kind of evidence that Rule 11–404(B) is meant to exclude. Allow-

---

1. Of course the same is true if Gallegos was on trial solely for the crimes relating to Ursula C. and the State was attempting to introduce evidence of Gallegos's actions toward Jamie S.

ing evidence of a pattern of similar behavior under the guise of "plan" would create an end run around the first sentence of Rule 11–404(B). This we are unwilling to do. *See Jones*, 120 N.M. at 189, 899 P.2d at 1143 ("Although the State argues that the other crime would be admissible to show 'common scheme' and to rebut the claim of consent, the way the evidence accomplishes this is through the prohibited method of proving propensity."); 22 Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice and Procedure* § 5244, at 555 (Supp.2005) (rejecting *State v. Bennett*, 36 Wash.App. 176, 672 P.2d 772 (1983), because it allowed other-act evidence "to prove that [the] defendant had engaged in intercourse as part of a plan to take advantage of runaways in [a similar] fashion").

{32} The Court of Appeals held in *State v. Montoya*, 116 N.M. 72, 74, 860 P.2d 202, 204 (Ct.App.1993), that "the fact that ... two crimes were 'planned' in the same way is not enough.... There must be some overall scheme of which each of the crimes is but a part." As the Court of Appeals recognized, an overly broad reading of "plan" would eviscerate Rule 11–404(B)'s general proscription against propensity evidence. The State attempts to distinguish *Montoya* by pointing out that the evidence at issue in *Montoya* was "uncharged conduct," whereas the other acts in the instant case were properly joined and, thus, "charged conduct." We fail to see the distinction. As discussed above, simply because charges are properly joined does not mean that the charges should not be severed. Moreover, in using Rule 11–404(B) to determine whether properly joined charges should be severed, the other-acts evidence in question will *always* be "charged conduct."

## 3. Opportunity

■ {33} We turn now to the issue of opportunity. On Gallegos's direct appeal, the State did not argue that evidence pertaining to Jamie S. and Ursula C. would be cross-admissible at separate trials to show that Gallegos had the opportunity to commit the

crimes. *Gallegos*, 2005–NMCA–142, ¶ 28, 138 N.M. 673, 125 P.3d 652. Nonetheless, the Court of Appeals addressed the issue of opportunity because the trial court stated that "evidence from both cases could be used in the other to show there was opportunity." *Id.* (internal quotation marks omitted). In its analysis, the Court of Appeals assumed, without deciding, that the extrinsic evidence would be cross-admissible under 11–404(B) at separate trials to show Gallegos's opportunity to commit the crimes against Jamie S. and Ursula C. because Gallegos "was a guard at YDDC and therefore had access to the inmates and was familiar with the facility." *Id.* ¶ 30. The Court went on to hold, however, that the evidence would not be admissible under Rule 11–403 largely because "it was uncontested at trial that Defendant was a guard at YDDC with access to the inmates and familiarity with the facility." *Id.*

{34} On certiorari to this Court, the State again does not specifically argue that the extrinsic evidence would be admissible as probative of Gallegos's opportunity to commit the crimes. Normally, we would consider this issue abandoned. *See State v. Hernandez*, 104 N.M. 268, 274, 720 P.2d 303, 309 (Ct.App.1986) ("A contention on appeal is deemed abandoned if appellant fails to cite authority or to explain the claim."). However, since the Court of Appeals addressed the issue, we believe it necessary that we do so as well.

■ {35} "The initial threshold for admissibility of prior uncharged conduct is whether it is probative on any essential element of the charged crime." *State v. Aguayo*, 114 N.M. 124, 128, 835 P.2d 840, 844 (Ct.App.1992). In this case, as the Court of Appeals noted, it was undisputed that Gallegos (1) was a guard at YDDC, (2) had access to Jamie S. and Ursula C., and (3) was familiar with YDDC. Because there would be no need for extrinsic-act evidence probative of these issues if there were separate trials,[2] a trial court would err by not excluding the

---

2. For purposes of this discussion, we assume that these facts were "consequential" within the meaning of Rule 11–401 NMRA. *See generally* 22 Wright & Graham, *supra*, § 5164 (1978 & Supp.

2005) (discussing differing views as to whether an undisputed fact is a fact of consequence and, thus, relevant).

evidence under Rule 11–404(B). In other words, if a fact is wholly undisputed, the only additional probative value extrinsic-act evidence would have on that issue would be to show a person's propensity. Evidence solely having value as propensity evidence is inadmissible under Rule 11–404(B) and is to be excluded under that rule automatically. *See also State v. Kim*, 153 N.H. 322, 897 A.2d 968, 973 (2006) ("To be relevant under Rule 404(b), the proffered evidence must be pertinent to an issue that is actually in dispute."). Because of our holding, we do not use this case to divine the mystery of the "opportunity" exception of Rule 11–404(B). *See Gallegos*, 2005–NMCA–142, ¶ 29, 138 N.M. 673, 125 P.3d 652; 22 Wright & Graham, *supra*, § 5241, at 484 (1978).

{36} Thus, because the evidence pertaining to each victim would not have been cross-admissible at separate trials, the trial court abused its discretion when it failed to sever the charges. We must now consider whether that error caused actual prejudice to Gallegos at his trial. In other words, we consider whether that error was harmless.

### C. A Defendant Was Actually Prejudiced by a Denial of a Motion to Sever Charges If There Was a Risk That the Jury Was Confused or That It Misused the Evidence

{37} Relying on *Jones*, the Court of Appeals held that when evidence is not cross-admissible because of Rule 11–404(B), a conviction at a trial of joined offenses establishes prejudice. *Gallegos*, 2005–NMCA–142, ¶ 32, 138 N.M. 673, 125 P.3d 652; *see also Ruiz*, 2001–NMCA–097, ¶ 11, 131 N.M. 241, 34 P.3d 630 ("A defendant is unfairly prejudiced when joinder allows the jury to consider evidence that would not otherwise be admissible under Rule 11–404(B) . . . ."). Only if the extrinsic act evidence was properly admitted under Rule 11–404(B), but wrongly admitted under Rule 11–403, would the Court of Appeals conduct a deeper inquiry into prejudice. *Id.*

{38} Although the Court of Appeals's rule is enticing because of its bright-line nature, we reverse the Court of Appeals on this point since its holding is in conflict with our prece-

dent. As noted above, we stated in *Jacobs* that "[a] defendant *might* be prejudiced if the joinder of offenses permitted the jury to hear testimony that would have been otherwise inadmissible in separate trials." 2000–NMSC–026, ¶ 15, 129 N.M. 448, 10 P.3d 127 (emphasis added). Granted, we did not explicitly hold in *Jacobs* that the possibility of prejudice occurs no matter whether the evidence would have been inadmissible because of Rule 11–404(B) or because of Rule 11–403. However, this is because we understood that the distinction did not matter. For example, we held in *Williams* that testimony regarding the defendant's enjoyment of anal sex should not have been admitted at his trial because it violated Rule 11–404(B). 117 N.M. at 559, 874 P.2d at 20. Having so determined, we did not do a Rule 11–403 analysis. Nonetheless, we determined that the admission of the testimony was harmless and, thus, reversal was not warranted. *Id.*

{39} In the context of an erroneous admission of evidence under Rule 11–404(B), we held in *Williams* that there were three factors appellate courts should consider in determining whether the error was harmless: (1) substantial evidence without reference to the improper evidence, (2) a greater proportion of admissible evidence in relation to inadmissible evidence such that it would not appear the wrongly admitted evidence contributed to the conviction, and (3) a lack of substantial conflicting evidence such that the State's testimony was discredited. 117 N.M. at 559, 874 P.2d at 20. While these factors may be helpful, we conclude that in a case such as this involving the question of whether a defendant was actually prejudiced by the trial court's wrongful denial of a motion to sever joined offenses, other factors should be considered.

{40} Cases from other jurisdictions which do not make the distinction we have just made between potential and actual prejudice, and which, as a result, necessarily conflate the roles of trial and appellate courts, have typically adopted some form of the "simple and distinct" test found in *Drew v. United States*, 331 F.2d 85 (D.C.Cir.1964). *See, e.g., State v. Lott*, 51 Ohio St.3d 160, 555 N.E.2d 293, 298 (1990) ("[W]hen simple and direct

evidence exists, an accused is not prejudiced by joinder regardless of the nonadmissibility of evidence of these crimes as 'other acts' under ... 404(B).''); *see also* 4 Wayne R. LaFave et al., *Criminal Procedure* § 17.1(d) n. 49 (2d ed.1999) (noting that "the mere fact there would be no cross-admissibility of evidence were there a severance is not, standing alone, a basis for a severance"); 2 Nancy Hollander et al., *Wharton's Criminal Procedure* § 11:11, at 11–93 (14th ed. 2006) ("Even in situations where otherwise inadmissible evidence of other crimes [is] admitted in a joint trial, the trial court need sever the charges only when sufficient prejudice would result...."). In *Drew*, the court stated that there is "no prejudicial effect from joinder when the evidence of each crime is simple and distinct, even though such evidence might not have been admissible in separate trials." 331 F.2d at 91. "[T]he very essence of this rule is that the evidence be such that the jury is unlikely to be confused by it or misuse it." *Id.* at 93. However, in order to ensure that the jury does not "becom[e] hostile or infer[ ] guilt from belief as to criminal disposition ... [,] great care must be exercised to protect the defendant." *Id.* at 91. Thus, in order for there to be no prejudice at a trial of joined offenses when the simple and distinct evidence as to each would not be cross-admissible at separate trials, court and counsel must exercise "a vigilant precision in speech and action far beyond that required in the ordinary trial." *Id.* at 94.

{41} Under this test, factors weighing in favor of prejudice include: (1) the prosecution intertwining the offenses in opening statement, during its case-in-chief, *see State v. Echols,* 128 Ohio App.3d 677, 716 N.E.2d 728, 740 (1998), or in closing argument, *see Woodard v. United States,* 719 A.2d 966, 973 (D.C.1998); (2) the defendant being found guilty on all counts, *see Echols,* 716 N.E.2d at 740; (3) factual similarities linking the offenses, *see State v. Boscarino,* 204 Conn. 714, 529 A.2d 1260, 1265 (1987); (4) offenses that

are inflammatory in nature, *see id;* (5) unusually long and complex trials, *see id.;* and (6) a conviction on a charge where the evidence is thin, *see State v. Schaim,* 65 Ohio St.3d 51, 600 N.E.2d 661, 670 (1992). On the other hand, factors tending to show that a defendant was not prejudiced by going to trial on the joined offenses include: (1) dissimilar offenses such that a jury would not confuse them, *see Echols* 716 N.E.2d at 740; (2) the defendant being acquitted of some charges, *see People v. Nickel,* 14 A.D.3d 869, 788 N.Y.S.2d 274, 276 (2005);[3] and (3) proper jury instructions that adequately make clear to the jury that it must not consider evidence inadmissible to a particular count when coming to a verdict on that count, *see Herring v. Meachum,* 11 F.3d 374, 378 (2d Cir.1993).

{42} However, *Drew* "has been criticized on the ground that it puts too much faith in limiting instructions to the jury and ignores the rationale of the rule against proof of other crimes." 1A Wright, *supra,* § 222, at 482; *see also* Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure,* 74 Yale. L.J. 553, 556–60 (1965). Thus, while other jurisdictions suggest that the trial court is to weigh the *Drew* factors, we believe they are more appropriate for an appellate court's use, particularly in light of the fact that most involve situations which the trial court simply cannot anticipate.

{43} We now apply and balance these various factors to the instant case. Particularly in its closing argument, the State urged the jury to consider together the evidence pertaining to Jamie S. and Ursula C. For example, at the very beginning of her closing, one of the prosecutors stated: "This case was about control and the defendant being in control of two young girls, two young inmates housed at YDDC. He was in control. They had no choice. They had no choice to be there; they had no choice as to what he did to them." Later, in the State's closing

---

**3.** *See also State v. Gallegos,* 109 N.M. 55, 64, 781 P.2d 783, 792 (Ct.App.1989) (acknowledging that acquittals "may often provide a strong indication of lack of prejudice"). *But see Boscarino,* 529 A.2d at 1265 ("We can only speculate as to why

the jury rendered varying conclusions.... It is beyond our power to probe the minds of the jurors in order to determine what considerations influenced their divergent verdicts.").

rebuttal, another prosecutor said the following:

> [H]e got to use [taxpayer] money that he received in that job to use YDDC as his own personal dating service. He had his own girls gone wild there. He could ask the girls to flash him. He could feel them up, kiss them. He could do those things, and why could he do those things? Because he was a guard and he had control.

Moreover, in presenting its case, the State intertwined the evidence relating to the separate offenses by presenting the testimony of Jamie S. and Ursula C. back-to-back at the very beginning of trial. The facts linking the charges were similar in that the charges stemmed from Gallegos's actions toward girls in his care as a guard at YDDC. Although the charges pertaining to each victim were distinct, all of them, as a general matter, were highly inflammatory in that they were offenses of a sexual nature involving children. *See, e.g., Montoya*, 116 N.M. at 75, 860 P.2d at 205 ("Evidence that a defendant committed a prior illegal sex act against a child is extremely prejudicial."). However, the highly inflammatory nature of a typical CSCM charge was tempered by the fact that Jamie S., who was nearly eighteen-years old at the time of the incidents, testified that her encounters with Gallegos were consensual, that he did not use his position of authority to coerce her, and that she considered him her boyfriend. Finally, although this was a relatively short and simple trial, the jury was only instructed that "[e]ach crime charged in the indictment should be considered separately." *See* UJI 14–6004 NMRA. While this instruction would generally suffice in situations where evidence pertaining to each charge would be cross-admissible at separate trials, we have grave doubts that it is "a vigilant precision in speech far beyond that required in the ordinary trial" that adequately protects a defendant at a trial of joined offenses when evidence of the offenses would not be cross-admissible. *See Drew*, 331 F.2d at 94.

{44} The balance thus far is in favor of finding actual prejudice. After considering the evidence and verdicts related to each victim, we conclude that Gallegos was actually prejudiced by the admission of evidence pertaining to Ursula C., but not by the admission of evidence pertaining to Jamie S. As just noted, the evidence relating to Jamie S. was not strong; nonetheless, Gallegos was convicted of the sole charge submitted to the jury in which Jamie S. was the victim. As such, we cannot be confident that the jury did not misuse the evidence that Gallegos masturbated in front of Ursula C. and asked her to disrobe when it found Gallegos guilty of using his position of authority to commit CSCM against Jamie S. Thus, we affirm the Court of Appeals's reversal of Gallegos's conviction of CSCM.

{45} The evidence pertaining to Ursula C., on the other hand, was somewhat stronger. Ursula C. testified that she saw Gallegos masturbating in front of her three times but that the first time it happened, she did not really know what Gallegos was doing. Ursula C. also testified that Gallegos asked her either to take her shirt off or to "flash" him. However, at times Ursula C.'s testimony was vague and confusing. Moreover, there was no other evidence linking Gallegos to these crimes. Nonetheless, we believe the fact that Gallegos was acquitted of one of the three indecent exposure charges and of the contributing to the delinquency of a minor charge shows that the jury was not confused or improperly influenced by the admission of evidence pertaining to Jamie S. when it considered the four charges pertaining to Ursula C. Thus, notwithstanding the trial court's error in failing to sever the charges, we hold that Gallegos suffered no actual prejudice on the charges related to Ursula C. We reverse the Court of Appeals on this point and affirm Gallegos's two convictions of aggravated indecent exposure.

{46} By this conclusion, however, we do not mean to imply that acquittals of some charges will always mean that a defendant was not actually prejudiced when he or she went to trial on joined offenses where the evidence pertaining to each would not have been cross-admissible at separate trials. *See, e.g., Woodard*, 719 A.2d at 973. Furthermore, we again note that in determining whether a defendant was actually prejudiced by the trial court's denial of his motion to sever, we have the luxury of conducting a hindsight review. Thus, our job is different

than the trial court's. The trial court's focus is on whether, at the time the motion to sever is made, the defendant "is prejudiced" to the extent there is an appreciable risk of reversal on appeal. If the evidence pertaining to each charge would not be cross-admissible at separate trials under Rule 11–404(B) or Rule 11–403, the trial court abuses its discretion when it fails to sever. However, on appeal we must determine whether this abuse actually prejudiced the defendant, warranting a new trial.

## III. CONCLUSION

{47} The State is obligated to join offenses pursuant to Rule 5–203(A). However, even though offenses are properly joined, a trial court may abuse its discretion when it denies a motion to sever. If evidence pertaining to each charge would not be cross-admissible at separate trials, the trial court abuses its discretion when it decides not to sever joined offenses. Before reversal is warranted on appeal, however, a defendant must show that he or she was actually prejudiced by the trial court's error. In this case, the trial court abused its discretion in failing to sever because the evidence pertaining to each charge would not have been cross-admissible at separate trials as evidence of Gallegos's "plan" or "opportunity." We conclude that Gallegos was actually prejudiced by the admission of evidence pertaining to Ursula C. but not by the admission of evidence pertaining to Jamie S. Affirming Gallegos's two convictions of aggravated indecent exposure, we reverse the Court of Appeals on this point and remand this portion of the case to the Court of Appeals so that it may address Gallegos's remaining claims. *See Gallegos,* 2005–NMCA–142, ¶ 40, 138 N.M. 673, 125 P.3d 652. At the same time, we affirm the Court of Appeals's reversal and remand for a new trial of Gallegos's conviction of CSCM.

{48} **IT IS SO ORDERED.**

WE CONCUR: PAMELA B. MINZNER, Justice, PATRICIO M. SERNA, Justice, PETRA JIMENEZ MAES, Justice, and RICHARD C. BOSSON, Justice.