This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40937**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**WILLIAM QUINTANA-DOIZAKI,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lucy Solimon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Meryl E. Francolini, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**BACA, Judge.**

**{1}** Defendant William Quintana-Doizaki stands convicted of seven counts of criminal sexual penetration (child under thirteen), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009); eight counts of criminal sexual contact of a minor in the second degree (child under thirteen), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003); and two counts of intimidation of a witness (threats) (reporting), contrary to NMSA 1978, Section 30-24-3 (1997). Defendant argues on appeal that (1) the prosecutor impermissibly commented

on his right to remain silent, and (2) the district court abused its discretion in failing to sever the charges relating to each child. Unpersuaded, we affirm.

**DISCUSSION**[1]

**I.      Right to Remain Silent**

**A.      Standard of Review**

**{2}**      Defendant first argues that the State at trial impermissibly elicited testimony and commented on Defendant's right to silence. "We review de novo the legal question whether the prosecutor improperly commented on the defendant's silence." *State v. Costillo*, 2020-NMCA-051, ¶ 6, 475 P.3d 803 (alterations, internal quotation marks, and citation omitted).

**B.      We Decline to Determine Whether a Defendant's Right to Silence Attaches at a Children, Youth & Families Department (CYFD) Family Centered Meeting (FCM)**

**{3}**      "The Fifth Amendment may be invoked in response to official questions in any proceeding, civil or criminal, formal or informal, where the answers might incriminate in future criminal proceedings." *State v. Filemon V.*, 2018-NMSC-011, ¶ 18, 412 P.3d 1089 (omissions, internal quotation marks, and citation omitted). We decline today to decide whether a CYFD FCM amounts to official questioning because even assuming arguendo that it does, for the reasons explained below we conclude that Defendant failed to invoke his right to remain silent and therefore any right to silence he may have had was not constitutionally protected.

**C.      Defendant Did Not Invoke His Right to Remain Silent**

**{4}**      "Where[, as here,] a defendant has made a proper objection at trial, the appellate court determines whether the prosecution commented on the defendant's protected silence, and if so, reverses the conviction unless the [s]tate can demonstrate that the error was harmless beyond a reasonable doubt." *See State v. DeGraff*, 2006-NMSC-011, ¶ 22, 139 N.M. 211, 131 P.3d 61 (internal quotation marks and citation omitted). We thus discern a three-step inquiry: (1) whether Defendant's silence is protected; if so, (2) whether the prosecution commented on that protected silence; and if the previous two questions are answered in the affirmative, (3) whether the error was harmless. Here, we need not reach steps two or three because we conclude Defendant's silence was not protected. We explain.

---

[1]Because this is an unpublished memorandum opinion written solely for the benefit of the parties, *see State v. Gonzales*, 1990-NMCA-040, ¶ 48, 110 N.M. 218, 794 P.2d 361, and the parties are familiar with the factual and procedural background of this case, we omit a background section and leave the discussion of the facts for our analysis of the issues.

**{5}** "[A] defendant's prearrest, pre[]*Miranda* silence, *once invoked*, may not be admitted as substantive evidence of guilt by a prosecutor at trial." *Costillo*, 2020-NMCA-051, ¶ 11 (emphasis added). Consequently, "[i]f [a d]efendant did not invoke [their] Fifth Amendment privilege, the prosecutor's comments on [the d]efendant's silence were not constitutionally prohibited." *Id.* ¶ 13.

**{6}** While "[n]o ritualistic formula" or "special combination of words" is required to invoke the right to silence, what *is* required is "an objection to a question *stated in language* that the propounder of the question may reasonably be expected to understand as an attempt to invoke the privilege." *Id.* (emphasis added) (alterations, internal quotation marks, and citations omitted). Here, Defendant used no words at all, he simply decided not to attend the FCM. As a consequence of this decision—unaccompanied by any indication that Defendant was not attending the FCM because he was asserting his right to silence—we are left without any statement from which it could reasonably be understood that Defendant was invoking his right to remain silent. *Cf. id.* ¶ 14 (concluding that the defendant "demonstrated his intent not to speak with [the d]etective . . . by *answering affirmatively* that he did not wish to speak further and by leaving the interview" (emphasis added)).

**{7}** Our case law is clear that "the constitutional privilege against self-incrimination is available only if it is invoked as the ground for refusing to speak" and that "[i]f the [defendant] desires the protection of the privilege, [they] must claim it." *Id.* ¶ 13 (alteration, internal quotation marks, and citations omitted). Here, Defendant did not affirmatively assert or claim the protection of the privilege against self-incrimination. Consequently, it is not necessary for us to decide whether the prosecution commented on Defendant's silence, or whether the alleged error was harmless because any comments by the prosecutor were not constitutionally prohibited. *See id.* ("If [the d]efendant did not invoke [their] Fifth Amendment privilege, the prosecutor's comments on [the d]efendant's silence were not constitutionally prohibited."). We, therefore, hold that Defendant's right to remain silent was not violated.

## II.    Severance of the Charges

### A.    Standard of Review

**{8}** Defendant also argues that he was prejudiced by the joinder of the charges relating to S.Q. and B.Q. (Victims), and therefore the charges should have been severed as to each. "We review a [district] court's denial of a motion to sever for an abuse of discretion." *State v. Chavez*, 2021-NMSC-017, ¶ 13, 485 P.3d 1279.

### B.    The District Court Properly Refused to Sever the Charges

**{9}** "[A district] court abuses its discretion in failing to sever when there is prejudice to the accused." *State v. Gallegos*, 2007-NMSC-007, ¶ 16, 141 N.M. 185, 152 P.3d 828. The defendant "carries the burden to establish prejudice." *State v. Garcia*, 2011-NMSC-003, ¶ 20, 149 N.M. 185, 246 P.3d 1057. "[O]ne test for abuse of discretion is whether

prejudicial testimony, inadmissible in a separate trial, is admitted in a joint trial." *Id.* ¶ 17 (internal quotation marks and citation omitted).

> Our first task, then, is to determine whether evidence separately pertaining to [Victims] would have been admissible had [Defendant] gone to trial only on the charges pertaining to one of them. If the evidence would have been cross-admissible, then any inference of prejudice is dispelled and our inquiry is over.

*Gallegos*, 2007-NMSC-007, ¶ 20.

**{10}** To ascertain whether evidence would have been cross-admissible in separate trials, we apply a two-step analysis. In this analysis, we begin by determining whether the evidence "satisfies a valid exception to the general prohibition on propensity evidence"; and if so, "then we balance the prejudicial effect of the evidence against its probative value to determine if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." *State v. Ruiz*, 2001-NMCA-097, ¶ 15, 131 N.M. 241, 34 P.3d 630 (alteration, internal quotation marks, and citation omitted). With this in mind, we turn first to an analysis of whether the evidence satisfies a valid exception to the general prohibition on propensity evidence.

**1. The Evidence Satisfies a Valid Exception to the General Prohibition on Propensity Evidence**

**{11}** "Rule 11-404(B) [NMRA] is a specialized rule of relevancy that . . . limits the admissibility of evidence that, although relevant, is unfairly prejudicial to the accused." *Ruiz*, 2001-NMCA-097, ¶ 13. Under Rule 11-404(B)(1) "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, under Rule 11-404(B)(2), "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."

**a. Identity and Modus Operandi**

**{12}** In this case, the State argues that the evidence is admissible to prove identity through modus operandi. *See State v. Peters*, 1997-NMCA-084, ¶ 13, 123 N.M. 667, 944 P.2d 896 ("In this case the [s]tate argued that the relevant purpose for introduction of evidence of the other crime was to show identity . . . through modus operandi."). "The identity exception to Rule 11-404(B) may be invoked when identity is at issue and when the similarity of the other crime demonstrates a unique or distinct pattern easily attributable to one person." *Peters*, 1997-NMCA-084, ¶ 14 (alteration, internal quotation marks, and citation omitted).

**{13}** Defendant contends that "[i]dentity was not at issue in this case" because "[t]here was no dispute that [Defendant] lived with [C]hildren." We disagree. Identity was plainly

at issue because Defendant suggested that Victims had falsely or mistakenly accused the wrong perpetrator.

**{14}** Moreover, Defendant acknowledges that "both [C]hildren accused him of very similar acts." We agree that the crimes against Victims are similar, and we conclude that their similarity demonstrates a unique or distinct pattern easily attributable to Defendant.

**{15}** This case is analogous to *State v. Corbin*, 1991-NMCA-021, 111 N.M. 707, 809 P.2d 57. In *Corbin*, "[t]he four victims . . . were all boys between the ages of thirteen and sixteen. All of the victims had worked for [the] defendant. The charges against [the] defendant on each of the counts constituted acts of a similar nature, occurring between July 1988 and January 1989." *Id.* ¶ 22.

**{16}** Similar to *Corbin*, here Victims were both Defendant's adopted daughters, who at the time were young girls close in age. Both Victims lived with Defendant. Finally, the charges against Defendant on each of the counts constituted acts of a similar nature, occurring between early 2013 and early 2019.

**{17}** Moreover, the facts in this case are more compelling as to modus operandi than the facts in *Corbin*. Here, the following facts further demonstrate a unique and distinct pattern attributable to Defendant, and therefore pertinent to identity: (1) both Victims testified that Defendant had anal, vaginal, and oral sex with them regularly in their apartment; (2) both Victims testified that they were often sexually abused while Defendant's wife was asleep; (3) both Victims testified that Defendant would often make them rub his penis with their hands and often touched their vagina and breasts; (4) both Victims testified that while Defendant was sexually abusing their sister, they bore witness to that abuse; (5) both Victims testified that Defendant sexually abused them simultaneously at least five times; and (6) both Victims testified that Defendant would ask them to bring him a Pepsi, and that is how Victims knew something was going to happen.

**{18}** We conclude, like we did in *Corbin*, that the evidence was indicative of a common modus operandi. *See id.*; *see also Peters*, 1997-NMCA-084, ¶ 15 (concluding that "[t]he two attacks share evidence of a common modus operandi" because the "two assaults shared a marked number of similarities which could logically lead a jury to the inference that these two women were attacked by the same man"). Having concluded that here the other-acts evidence is relevant to identity and modus operandi, and not merely propensity evidence, we need not address whether the evidence is also admissible as relevant to intent or unlawfulness, or whether the evidence is admissible because Defendant put his character and proclivity for sexual abuse at issue. *See Gallegos*, 2007-NMSC-007, ¶ 22 (stating Rule 11-404(B) "prohibits the use of otherwise relevant evidence when its *sole* purpose or effect is to prove criminal propensity" (emphasis added)). We therefore move to step two of the analysis for cross-admissibility: balancing the prejudicial effect of the evidence against its probative value.

**2. The Probative Value of the Evidence is Not Substantially Outweighed by Its Prejudicial Effect**

**{19}** Rule 11-403 NMRA provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." "Because a determination of unfair prejudice is fact sensitive, much leeway is given [district court] judges who must fairly weigh probative value against probable dangers." *State v. Otto*, 2007-NMSC-012, ¶ 14, 141 N.M. 443, 157 P.3d 8 (internal quotation marks and citation omitted). In this case, we conclude that the probative value of the evidence is not substantially outweighed by the dangers enumerated in Rule 11-403.

**{20}** At trial, Defendant denied acting with the requisite intent, asserting that he did not have the character for sexual abuse and arguing instead that he only "tickled" Victims and "show[ed] them affection as a dad" but that he did not touch them sexually. Furthermore, as Defendant states, "[T]he jury convicted [Defendant] in what was essentially a credibility contest with no physical or forensic evidence." Finally, during opening argument the defense asserted that there were "no other witnesses to the abuse that the State claims went on in an ongoing pattern for two years."

**{21}** Thus, "Defendant's case relied on convincing the jury that [Victims'] account[s] were] misguided because the perceived molestation was actually harmless parenting." *See State v. Bailey*, 2017-NMSC-001, ¶ 24, 386 P.3d 1007. Without the testimony of Victims, the jury was much more likely to believe that what happened was a mistake or accident that only occurred in the course of tickling and playing with Victims. *See Otto*, 2007-NMSC-012, ¶ 15 ("Without the evidence of the uncharged acts, the jury was much more likely to believe that what happened . . . was a mistake or accident that only occurred because [the d]efendant was asleep."). "There was no other evidence available to rebut this potential inference." *See id.* Consequently, admission of Victims' testimony—relating eye-witness accounts of occasions where Defendant's conduct could not be viewed as harmless parenting—was highly probative of the State's argument that Defendant was less likely to have been acting lawfully when committing the charged incidents. *See Bailey*, 2017-NMSC-001, ¶ 24 ("[A]dmission of evidence of the uncharged Sandoval County incident—an occasion where [the d]efendant's conduct could not be viewed as harmless parenting—was highly probative of the [s]tate's argument that [the d]efendant was less likely to have been acting lawfully when committing the charged incidents.").

**{22}** As to prejudice, we remain mindful that "[e]vidence of sexual contact with a minor is uniquely and inherently prejudicial" and that "[a]dmission of such evidence must be treated with caution in order to not unduly influence a jury's verdict." *Id.* ¶ 26. Nevertheless, "[t]he purpose of Rule 11-403 is not to guard against any prejudice whatsoever, but only against the danger of *unfair* prejudice." *Otto*, 2007-NMSC-012, ¶ 16 (alteration, internal quotation marks, and citation omitted). And "[e]vidence is not unfairly prejudicial simply because it inculpates the defendant." *Id.* (internal quotation

marks and citation omitted). Instead, "the task under Rule 11-403 is . . . to exclude . . . evidence having an unduly prejudicial impact on a defendant that far outweighs the evidence's probative effect in proving an element of the [s]tate's case." *Bailey*, 2017-NMSC-001, ¶ 26. In this case, where an element of the State's case was specific, unlawful intent, and Defendant claims he lacked that intent, we conclude the inherently prejudicial nature of the evidence was not enough to substantially outweigh its probative value.

**{23}** For these reasons, we conclude that the evidence was cross-admissible and the district court did not abuse its discretion in denying the motion to sever. *See Peters*, 1997-NMCA-084, ¶ 12 ("If evidence of one offense would be admissible in the trial of the other, a [district] court does not abuse its discretion in denying a motion to sever."). Because we conclude the district court did not err in denying the motion to sever, we do not reach the issue of harmless error.

**CONCLUSION**

**{24}** We affirm on all grounds.

**{25}  IT IS SO ORDERED.**

**GERALD E. BACA, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**JANE B. YOHALEM, Judge**