# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date: **November 4, 2014**

**NO. 31,413**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DEANGELO M.,**

Child-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Drew D. Tatum, District Judge**

Gary K. King, Attorney General
Pranava Upadrashta, Assistant Attorney General
Santa Fe, NM

for Appellee

Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Appellant

**OPINION**

**KENNEDY, Chief Judge.**

{1}    DeAngelo M. (Child) appeals his convictions for second-degree murder, burglary, larceny, and tampering with evidence.  Child appeals the district court's denial of his motion to suppress statements he made during an interrogation by three investigating officers and contends that the State did not overcome the rebuttable statutory presumption that his statements were inadmissible against him because he was thirteen years of age.  *See* NMSA 1978, § 32A-2-14(F) (2009).

{2}    We evaluate whether the State successfully rebutted the presumption of inadmissibility of statements made by a thirteen-year-old child under Section 32A-2-14(F).  We conclude that the evidence presented by the State to the district court did not rebut the presumption of inadmissibility with clear and convincing evidence.  *State v. Adam J.*, 2003-NMCA-080, ¶¶ 10-11, 133 N.M. 815, 70 P.3d 805.  Therefore, Child's statements were improperly admitted.  We reverse the district court on its denial of the motion to suppress Child's statements.  We affirm on the issues of denial of his motion to sever, request for a bill of particulars, and demand for a twelve-person jury.  Accordingly, we remand this case for a new trial.

# I. BACKGROUND

{3} Child was eight days past turning age thirteen when he was interrogated by three investigators in connection with the murder of Angel Vale. The officers interviewed neighbors and witnesses, including Child's mother. On July 23, two retired police officers, who were acting as agents of the district attorney, and a uniformed police officer drove Child and his mother to the Roosevelt County Law Enforcement Complex where they questioned him. His mother was present throughout the interrogation. One officer read and explained Child's *Miranda* rights to him, which, according to the officer's testimony, Child appeared to understand. During the interrogation, Child made inculpatory statements to the officers regarding the burglary of Vale's home. Child was arrested.

{4} Child filed a motion to suppress his statements. Two of the investigators and Child's teacher at the Curry County Juvenile Detention Center testified at the suppression hearing. The district court found that Child had knowingly, intelligently, and voluntarily waived his rights and denied his motion to suppress his statements. Child also filed a motion to sever the murder, aggravated burglary, one count of tampering with evidence from larceny, and the second count of tampering, a motion for a bill of particulars, and a motion to compel the State to allow the case to be heard

by twelve jurors instead of six. The district court denied each motion. Defendant timely filed this appeal.

**II.    DISCUSSION**

**A.    Child's Motion to Suppress His Statements**

{5}    Prior to trial, Child filed a motion to suppress his statements that were obtained during the interrogation by the two district attorney investigators and a police officer based on the State's failure to rebut the presumption of inadmissibility for a thirteen-year-old child's statements under Section 32A-2-14(F). The district court denied the motion. The denial of a motion to suppress is reviewed de novo. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024; *State v. Jade G.*, 2007-NMSC-010, ¶ 15, 141 N.M. 284, 154 P.3d 659.

{6}    Child argues that the standard created in *Adam J.* for the State to rebut the "presumptive inadmissibility" of statements by a child under the age of fifteen years is contrary to legislative intent because it requires comparison of the accused's ability to give a knowing, intelligent, and voluntary waiver of rights to an average of other protected young children, instead of requiring an individualized determination of whether the child has the ability to understand legal consequences and not to be unduly influenced by authority figures. Child further argues that, even if *Adam J.* was

3

correct, the State did not sufficiently rebut the presumption that his statements to the police were inadmissible.  2003-NMCA-080, ¶ 7.

{7}     The State argues that the *Adam J.* standard is appropriate and that the State rebutted the presumption that Child's statements were inadmissible by presenting evidence from the two investigating officers and his teacher regarding his personal traits that supported the district court's finding that he had the ability to knowingly, intelligently, and voluntarily waive his rights.[1]  For the reasons that follow, we conclude that *Adam J.*, while equating a particular age to a legislative line between children who do or do not have the developmental maturity to make a valid waiver, nevertheless significantly expands the range of inquiry to assess factors "particular to an individual child." *Id.* ¶ 8.  Viewing this case in light of the expansive evaluation of circumstance and personal characteristics that *Adam J.* and Subsection (F) require to be conducted by the district court with regard to thirteen-year-old children, we conclude that the State's evidence was insufficient to rebut the presumption that Child was incapable of a valid waiver of his right under Section 32A-2-14(F).

---

[1]Child does not challenge the adequacy of the advice of *Miranda* rights given to him by the officers in this case.

**1. The Two-Tier Analysis of Ability to Waive Rights and Knowing, Intelligent, and Voluntary Waiver Under Section 32A-2-14 of the Children's Code**

{8} The capacity to waive Fifth Amendment rights is assumed for children over fifteen and for adults. *See State v. Jonathan M.*, 1990-NMSC-046, ¶ 8, 109 N.M. 789, 791 P.2d 64; *see also Gutierrez*, 2011-NMSC-024, ¶ 7 (requiring the same assessment for adults and children when determining the legitimacy of a *Miranda* waiver); *State v. Martinez*, 1999-NMSC-018, ¶¶ 14-15, 127 N.M. 207, 979 P.2d 718 (determining that the factors used in evaluating a waiver of constitutional rights for juveniles over the age of fourteen are essentially the same as those used for an adult). This is because Section 32A-2-14 of the Children's Code assumes that children fifteen years old and older are more similar in development and maturity to adults and, therefore, are better able to protect their rights. *See Jonathan M.*, 1990-NMSC-046, ¶ 8 (explaining that children over fifteen and adults are unlikely to make involuntary statements after *Miranda* warnings due to their higher level of sophistication); *see also Martinez*, 1999-NMSC-018, ¶ 18 (stating that Section 32A-2-14 codifies that the adult rule for a successful waiver of rights applies to children fifteen years old and older). When a defendant fifteen years old and older raises his lack of capacity to waive Fifth Amendment rights, the state must prove that he waived his rights by a preponderance of the evidence. *Gutierrez*, 2011-NMSC-024, ¶ 7.

{9} However, the Children's Code emphasizes the difficulty a child younger than fifteen experiences due to a lack of maturity and development when waiving Fifth Amendment rights. The Children's Code protects children younger than fifteen years old by creating a rebuttable presumption that statements given by thirteen- or fourteen-year-old children are inadmissible. Section 32A-2-14(F); *see In re Francesca L.*, 2000-NMCA-019, ¶ 7, 128 N.M. 673, 997 P.2d 147 (holding that the Children's Code grants heightened protection only for the statements of those under fifteen years old), *overruled on other grounds by Adam J.*, 2003-NMCA-080, ¶ 10. The rebuttable presumption of inadmissibility created by Subsection (F) "stresses age in its effort to draw the line between children who are too young to waive their rights and those who are not." *Adam J.*, 2003-NMCA-080, ¶ 8. The presumption is based on a legislative recognition that most children under fifteen are less capable of understanding and protecting their legal interests than are older children and adults. *E.g.*, *Jonathan M.*, 1990-NMSC-046, ¶ 8 (interpreting previous version of Section 32A-2-14 to reflect that young children do not have the capacity to understand or protect their constitutional rights). Subsection (F) creates a constitutional classification based on age that requires this level of protection. *Francesca L.*, 2000-NMCA-019, ¶ 12. It is an age-based presumption that is intended to "draw the line

6

between children who are too young to waive their rights and those who are not." *Adam J.*, 2003-NMCA-080, ¶ 8.

{10} The child's "[a]ge is particularly pertinent because Subsection [(F)] creates a distinction based upon the age of a child." *Francesca L.*, 2000-NMCA-019, ¶ 12. A child's proximity in age to thirteen is also relevant to this determination and can alone serve as an indication that the state did not rebut the presumption. *See Adam J.*, 2003-NMCA-080, ¶ 5 (stating that the district court could have determined that the state did not rebut the presumption based exclusively on the fact that the child had only recently turned thirteen). Without sufficient intellectual and emotional development, not only are young children unable to understand and protect their legal interests, they are also unable to understand the legal consequences of their statements. They may also be affected by the inherent intimidation of questioning by authority figures such as police. *Gallegos v. Colorado*, 370 U.S. 49, 54 (1962) (stating that a fourteen-year-old child is unequal to police in knowledge and understanding of consequences of interrogation questions and is unable to protect his interests). For these reasons, our Legislature has required the state to rebut a presumption that a child of thirteen years is incapable of giving a valid waiver of his rights before his statement can be used against him. Section 32A-2-14(F); *Adam J.*, 2003-NMCA-080, ¶ 6.

{11}	Section 32A-2-14(F) specifically provides heightened protection to thirteen-year-old children beyond the specific requirements of Subsection (E). *Adam J.*, 2003-NMCA-080, ¶¶ 3, 10. Thus, before ever deciding admissibility based on whether the waiver was knowing, intelligent, and voluntary, the district court must make an initial determination of whether a thirteen-year-old child who has made a statement is capable of such a waiver. *Id.* ¶ 10; *Francesca L.*, 2000-NMCA-019, ¶ 10. The statutory expectation is simply that thirteen-year-old children are presumed incapable of a valid waiver absent a showing that the child had at least the same ability to give a knowing, voluntary, and intelligent waiver as an average fifteen-year-old child. *See Adam J.*, 2003-NMCA-080, ¶¶ 9-11.[2] The child's personal traits, including "background, maturity, intelligence, ability to understand and react to new situations, and other relevant personal factors" are examined to determine whether the child is sufficiently above average as to rebut the presumption. *Id.* ¶ 8.

{12}	Even while "an analysis of the circumstances may assist the children's court in understanding the child's personal traits, such analysis is secondary to, and does not substitute for, an analysis of the child's personal traits" under Subsection (F).

---

[2]Although *Adam J.* and *Francesca L.* speak of comparing the child-defendant to the average thirteen- or fourteen-year-old, Child here is only days past his thirteenth birthday. Even if he was advanced for his age to the developmental level of an average fourteen-year-old child, he would still presumptively have given an inadmissible statement.

*Adam J.*, 2003-NMCA-080, ¶ 10. Thus, under Section 32A-2-14, the determination of whether a thirteen-year-old child knowingly, intelligently, and voluntarily waived his rights first requires an analysis of the child's "personal traits." The focus in this case must be on the child's maturity, intelligence, and development. In short, the state must affirmatively distinguish the particular child's ability to waive rights from the presumptive inability to do so established by Subsection (F) of any child under the age of fifteen. *Adam J.*, 2003-NMCA-080, ¶¶ 9-11. If the district court is not satisfied that the rebuttable presumption of incapacity has been overcome based on competent evidence of the personal traits of the child beyond age alone, then the court's inquiry is complete at that point, and the statement is excluded. *Id.* ¶ 10 (holding that the child's ability to waive is a threshold determination and must be decided before determining the statement's admissibility as the product of a knowing, intelligent, and voluntary waiver).

{13}   For the state to make such a distinction, the characteristics of an average fifteen-year-old child must be established by the evidence, as well as the individual characteristics of the child. We note that, upon the question of competency being raised by the adult defendant in a criminal case, evaluating his or her competency to stand trial "must be professionally evaluated by a qualified professional." *State v. Flores*, 2005-NMCA-135, ¶ 17, 138 N.M. 636, 124 P.3d 1175. We do not regard

9

competency being that a defendant "understands the nature and significance of the proceedings, has a factual understanding of the charges, and is able to assist his attorney in his defense" to be so far removed in concept or scope from determining a thirteen- or fourteen-year-old child's developmental status with regard to having the ability to waive Fifth Amendment rights. *Id.* ¶ 16 (internal quotation marks and citation omitted). This consideration is particularly acute when the child, as here, has only recently turned thirteen. *See Francesca L.*, 2000-NMCA-019, ¶ 12; *see also Adam J.*, 2003-NMCA-080, ¶ 5 (acknowledging that "the children's court's finding that the child had only recently turned thirteen . . . was relevant to its conclusion that the child was entitled to a heightened protection because of her age" (internal quotation marks and citation omitted)). We regard as beyond the ability of lay witnesses, such as were presented by the State in this case, the task of rebutting a presumption that a thirteen-year-old does not possess the developmental attributes to render him capable of a waiver and distinguishing those characteristics head-to-head against the developmental level of an average fifteen-year-old child. We believe that a hearing that is equivalent to a competency hearing in the quality of its evidence is required. At that hearing, the state must present evidence as to both the benchmark to be reached and the qualities of the child that meet it and that the thirteen-year-old child possessed personal faculties equivalent to what is required to find an ability to

waive rights that would satisfy an adult standard for waiver. Anything less is insufficient. In this case, the poorly presented evidence of two retired police officers and a teacher, who had no background with Child beyond being a half-day teacher to all of the children in the juvenile detention facility, is insufficient as we discuss below. Although competency to stand trial must meet only a preponderance standard, this situation is different. We next take this opportunity to establish the standard of proof required to rebut the presumption of inadmissibility of Child's statements.

**2.      Clear and Convincing Evidence is Required to Rebut the Presumption**

{14}      The question of the proper standard of proof is generally a matter for judicial resolution. *In re Valdez*, 1975-NMSC-050, ¶ 12, 88 N.M. 338, 540 P.2d 818. Although the parties did not raise the issue of the level of evidence required to show that Child did not have the ability to waive his rights, we take this opportunity to clarify the law.

{15}      For persons older than fifteen years where a valid waiver is presumed by law, waiver may be proved by a preponderance of the evidence. *Gutierrez*, 2011-NMSC-024, ¶ 7. For children thirteen or fourteen years old, there is a rebuttable presumption of inadmissibility, which, by providing "heightened protection" of constitutional proportions to those children, necessarily alters the level of proof required for the state to meet its burden. Our Supreme Court has held that where fundamental

11

liberties are involved and matters involving psychological testimony are subject to some interpretation, the standard of proof must reflect the gravity of the interests at stake. *Valdez*, 1975-NMSC-050, ¶ 20. Specifically, our Supreme Court has held that the state must meet a "heavy burden" in order to overcome a statutory rebuttable presumption. *State v. Gallegos*, 2011-NMSC-027, ¶ 55, 149 N.M. 704, 254 P.3d 655. Other cases indicate that the gravity of the burden requires clear and convincing evidence. *See Weeks v. Bailey*, 1927-NMSC-048, ¶ 9, 33 N.M. 193, 263 P. 29 (stating that "only clear and convincing evidence can overcome [a rebuttable] presumption" (internal quotation marks and citation omitted)); *see also In re Adoption of J.J.B.*, 1995-NMSC-026, ¶ 59, 119 N.M. 638, 894 P.2d 994 (stating that "presumption favoring the natural parent can be rebutted by showing serious parental inadequacy with clear and convincing evidence"); *Lucero v. Lucero*, 1994-NMCA-128, ¶ 24, 118 N.M. 636, 884 P.2d 527 (holding that substantial evidence supported the district court's finding that "presumption of a lack of testamentary capacity was overcome by clear and convincing evidence" (internal quotation marks and citation omitted)), *superseded on other grounds by statute as stated in Clinesmith v. Temmerman*, 2013-NMCA-024, 298 P.3d 458, *cert. denied*, 2013-NMCERT-001, 299 P.3d 863; *Valdez*, 1975-NMSC-050, ¶ 20 ("For evidence to be clear and convincing, it must instantly tilt the scales in the affirmative when weighed against the evidence

in opposition and the fact finder's mind is left with an abiding conviction that the evidence is true." (internal quotation marks and citation omitted)).

{16} Thus, we hold that rebutting the presumption in Section 32A-2-14(F) requires the state to present clear and convincing evidence that, in the totality of the circumstances, the child's personal traits give him an above-average ability to knowingly, intelligently, and voluntarily waive his rights in the way the statute presumes a fifteen-year-old child can. We now apply this standard to the proceedings in this case.

**3.    The District Court Erred in Denying Child's Motion to Suppress His Statements to Police Officers**

{17} Child's statements cannot be properly admitted unless the State proves that, by clear and convincing evidence, he was capable of a knowing, intelligent, and voluntary waiver of his rights.[3] We need to go no farther in this case than examining the evidence presented concerning Child's individual attributes to conclude that he was not capable of effectively waiving his rights in this instance. The State presented evidence from three persons during the suppression hearing:  two of the three

[3]We note that, although the State claims that Child was party to a voluntary interview and not a custodial interrogation, he does not raise the issue.

13

investigating officers who interrogated Child, Agents Dan Blair and Dan Aguilar;[4] and Ron Allen, who had been Child's teacher at the detention center.

{18}     Agents Blair and Aguilar testified that, based on their experience interviewing children of similar age, Child was articulate, inquisitive, and aware of his constitutional rights, was more mature and intelligent than average and, in their opinion, had knowingly, intelligently, and voluntarily waived his rights. Agent Blair testified about Child based only upon the contact he had with Child during the interrogation. He did not review any school or other records concerning Child. Agent Blair stated that Child engaged in conversations with adults, seemed interested in learning, was aware of his surroundings, and asked questions about his rights and stated he understood. Agent Blair also testified initially that Child's mother had stated that he was an "A" and "B" student, but mentioned, on cross-examination, that she had also stated that he had "C" and "D" grades in some classes and had not told Agent Blair about an "F" grade. No evidence of Child's actual grades was presented. Agent Blair stated that Child was articulate and had checked out a young adult book of over four hundred pages from the library on the day before the interrogation.

[4]Agents Blair and Aguilar were both investigators from the District Attorney's Office. Both were retired police officers.

14

There was no evidence as to why he chose that book or that he had read any of it yet.[5] From this, however, Agent Blair concluded that Child seemed mature and more intelligent than most children his age and, based solely on the interview, he believed Child's waiver was knowing, intelligent, and voluntary. No comparison beyond "children his age" was ever provided. This is insufficient under the standard we have enunciated in *Francesca L.* and *Adam J.*

{19}     Agent Aguilar testified that Child was more inquisitive about his rights as compared to other children he had interviewed, was more independent, understood the officers' questions, and appeared to understand his rights. Any statement relating Child's capacity specifically to the standard we employ was not provided to the district court. He testified that Child seemed more advanced than the average thirteen-year-old child with whom he had come into contact as a detective in crimes against children. Agent Aguilar felt that Child was actively involved in the explanation of his rights. This testimony was similarly inadequate.

{20}     Allen, Child's teacher, testified that Child was well-read, inquisitive, and readily corrected the grammar and vocabulary of the other juveniles in the detention center and, in his opinion, Child was more intelligent than the average detainees in

---

[5]Child was in the eighth grade at the time. The book has been designated at a fourth-grade reading level. http://www.scholastic.com/teachers/book/twilight#cart/cleanup.

his age group. Allen testified that he had only taught half time between an alternative school and the juvenile detention center where Child was being held and, therefore, compared Child only to other children in the alternative school. He had no other contact with Child prior to his arrest or knowledge of the capabilities of children not in an alternative school. Allen stated that the reading levels of the students at alternative schools ranged from far below average to average or above, that the students were typically behind, and that Child's intelligence was generally above the other average alternative school students. Allen was unable to define "average" beyond the students at the school whose ages were not mentioned. Allen stated that Child seemed well-read and read more than the other children and was intelligent and inquisitive, though he was at an average math level.

{21}    However, Allen did not mention Child's school records, nor was he asked to testify regarding Child's grades or testing scores prior to being in custody, or otherwise asked to conclude that Child had the maturity and discernment of an average fifteen-year-old child. *See Moreno v. State*, 510 S.W.2d 116, 119 (Tex. App. 1974) (evaluating extensive records, including psychiatric diagnostic reports, to determine that the sixteen-year-old child had average intelligence and was more socially mature than average). Nor did Allen make any conclusion regarding Child's ability to understand complex legal rights and having sufficient capacity to waive

16

those rights. We conclude that the evidence presented by the three witnesses did not establish that Child had the maturity and intelligence of an average fifteen-year-old child to understand his situation and the rights he possessed.

{22} Evaluating the evidence against *Adam J.* and the standards we have enunciated here, we note first that Child's age is at the very lowest possible end of the age range at which his statements can be used at all. Particularly important is the proximity of his age to that which would render his statements conclusively inadmissible. *Adam J.*, 2003-NMCA-080, ¶ 5; *Francesca L.*, 2000-NMCA-019, ¶ 6 (holding proximity to age thirteen to be of possibly conclusive significance). Comparing him to other thirteen-year-old children, or other children whose ages and developmental levels are either not stated or irrelevant, does not provide evidence that he is as advanced as a fifteen-year-old child, leaving the presumption of Subsection (F) intact as to his own age of thirteen.

{23} We conclude that the evidence presented by the State through answers to a significant number of leading questions did not amount to clear and convincing evidence of Child's ability to waive his legal rights. The testimony of the investigating officers was based solely on their single interaction with Child during the interrogation. Each officer provided no more than the knowledge they had about Child based on the interaction during the interrogation and some statements from his

17

mother. On this basis alone, they concluded that Child seemed more intelligent and mature than most children of unknown ages that they have worked with and was able to waive his rights. They did not compare Child's abilities and maturity to the panoply of other average juveniles of any stated age level. The officers also did not testify in detail about the quality of the other children they had previously dealt with or the nature of those contacts. The investigators, given the likelihood of bias stemming from their role as Child's accusers, can be assumed to have colored views of their own opinions and actions. *See State v. Gomez*, 1997-NMSC-006, ¶¶ 36, 38, 122 N.M. 777, 932 P.2d 1 (stating that law enforcement is a competitive enterprise); *see also State v. Bomboy*, 2007-NMCA-081, ¶ 14, 141 N.M. 853, 161 P.3d 898 (stating that the competitive pressures of law enforcement may compromise judgment), *rev'd on other grounds*, 2008-NMSC-029, 144 N.M. 151, 184 P.3d 1045. Furthermore, Allen's testimony, showing his lack of contact with Child prior to being held at the detention center, meant he could only compare Child to other children in the detention center and alternative school. He neither made reference to average thirteen-year-old children in general nor spoke to objective measures, such as Child's school records or testing scores from his regular school. Allen's testimony similarly does not fulfill the State's burden of presenting clear and convincing evidence in a matter of such gravity as this.

18

{24}     The question in cases where the child benefits from the rebuttable presumption of inadmissibility is not simply whether the child seems to be intelligent or mature, which seems to have been the State's sole thrust in its case. Instead, the question for the district court is whether, under a clear and convincing standard of proof, the State presented evidence that Child has above-average intelligence, maturity, and other relevant personal traits compared to average thirteen-year-old children that show that he has the capacity to understand his rights and understand the consequences of waiving those rights in the way a fifteen-year-old child would. The State did not do so here. Whether Child reads books, converses with adults, corrects vocabulary and grammar, and "seems" more intelligent and mature than other children from the perspective of his arresting officers is not clear and convincing evidence that he had an above-average ability based on his personal traits and understanding of the situation to allow him to waive his rights. More evidence is needed to overcome the statutory presumption against admitting the statements of a thirteen-year-old child. As such, Child's statements were inadmissible, and we reverse the district court's denial of Child's motion to suppress and remand for a new trial. We now address Child's other arguments that may arise should this case be tried again.

**B.     Child's Motion to Sever the Charges**

{25}     Child filed a motion to sever the murder, aggravated burglary, and one count of tampering with evidence charges from larceny and the second count of tampering. The district court denied the motion to sever on the grounds that the courses of conduct alleged in all five charges were based on a connected series of acts, the evidence would have been cross-admissible, and Child failed to show sufficient prejudice to warrant severance of the charges. The denial of a motion to sever is reviewed under an abuse of discretion standard. *State v. Lovett*, 2012-NMSC-036, ¶ 10, 286 P.3d 265.

{26}     Child argues that the evidence of the larceny, primarily his confession, would not be cross-admissible because it was improper evidence under Rule 11-404(B) NMRA. Child further argues that, even if the evidence was cross-admissible, it should have been kept out because the probative value was substantially outweighed by the danger of unfair prejudice under Rule 11-403 NMRA. The State argues that the evidence would be cross-admissible because it is proper other act evidence because it shows intent, opportunity, knowledge, and absence of mistake. The State points out that Child did not fully argue his reasoning for the inadmissibility of the evidence under Rule 11-403, but the State argues that the probative value of the evidence is the other act evidence of intent, opportunity, knowledge, and absence of

20

mistake and that the potential prejudice is diluted by the varying time frames between the alleged acts and the nature of the crimes charged.

{27} Rule 5-203(A) NMRA requires the state to join certain charges if the offenses "are of the same or similar character, even if not part of a single scheme or plan[] or . . . are based on the same conduct or on a series of acts either connected together or constituting parts of a single scheme or plan." *State v. Gallegos*, 2007-NMSC-007, ¶ 10, 141 N.M. 185, 152 P.3d 828. Even when offenses are properly joined, a district court may abuse its discretion in failing to sever charges if there is prejudice to the accused. *Id.* ¶¶ 9, 16.

{28} The first step of this inquiry requires determination of whether the evidence pertaining to each charge would be cross-admissible in separate trials. *Id.* ¶ 19. The defendant may be prejudiced by admission of evidence that would be otherwise inadmissible. *Id.* "On the other hand, cross-admissibility of evidence dispels any inference of prejudice." *Id.* (alteration, internal quotation marks, and citation omitted).

{29} Cross-admissibility is determined through an analysis of Rule 11-404(B). *See Gallegos*, 2007-NMSC-007, ¶¶ 20-21. Under Rule 11-404(B)(1), "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."

Nevertheless, evidence of a crime, wrong, or other act may permissibly be used for another purpose, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Rule 11-404(B)(2). "It remains within a [district] court's discretion to admit evidence of . . . prior acts . . . when the [s]tate shows that such evidence is relevant to a material issue other than conformity with character." *Martinez*, 1999-NMSC-018, ¶ 30 (alteration, internal quotation marks, and citation omitted). The state must "identify and articulate the consequential fact to which the evidence is directed." *Gallegos*, 2007-NMSC-007, ¶ 22.

{30} The evidence in this case would have been cross-admissible because the evidence was proper other act evidence in accordance with Rule 11-404(B)(2). The evidence of the larceny, including Child's statement, was evidence of his knowledge and opportunity in relation to the eventual murder of Vale. From this evidence, the jury could infer that Child knew how to gain access to Vale's house and that he had the opportunity to do so previously and could have done so again. This does not require the inference that Child has the propensity or character to commit larceny and, therefore, murder, which would be improper character evidence under Rule 11-404(B)(1). Instead, it is permissible under Rule 11-404(B)(2). We conclude that the

22

district court did not abuse its discretion by denying Child's motion to sever. We affirm the district court on this issue.

**C. Child's Motion for Bill of Particulars/Statement of Facts**

{31} Child argues that the denial of his motion for a bill of particulars violated his due process rights because he required an understanding of the State's theory for connecting the crimes charged and the specific evidence that would be used in order to adequately prepare his defense. The State argues that Child was able to adequately prepare his defense because the delinquency petition described the offenses. He was given a witness list and had access to 1200 documents due to the State's open file policy. We review the district court's denial of a motion for a bill of particulars for an abuse of discretion. *State v. Mankiller*, 1986-NMCA-053, ¶ 18, 104 N.M. 461, 722 P.2d 1183.

{32} As our precedent indicates, "[t]he object of a bill of particulars . . . is to enable [an accused] to properly prepare his defense[.]" *State v. Mosley*, 1965-NMSC-081, ¶ 4, 75 N.M. 348, 404 P.2d 304; *State v. Archuleta*, 1970-NMCA-131, ¶ 32, 82 N.M. 378, 482 P.2d 242. The bill of particulars must "give [the accused] and the court reasonable information as to the nature and character of the crime charged." *State v. Shroyer*, 1945-NMSC-014, ¶ 70, 49 N.M. 196, 160 P.2d 444; *see Mosley*, 1965-NMSC-081, ¶ 4. However, these requirements do not require the state to "plead

23

evidence[.]" *Mosley*, 1965-NMSC-081, ¶ 4. A bill of particulars/statement of facts is generally not required when the state maintains an open file policy. *Mankiller*, 1986-NMCA-053, ¶ 18. In determining whether to require a bill of particulars, the district court must consider the whole record. *Archuleta*, 1970-NMCA-131, ¶ 33. In order to satisfy due process, the primary determination is whether the accused had enough information to adequately prepare his defense. *Mosley*, 1965-NMSC-081, ¶ 4.

{33} In his request for a bill of particulars, Child asked for the following:

    1.    Each fact, stated with specificity and particularity, upon which the State relies to prove each element of the offense charged.

    2.    The theory of the case.

    3.    Each witness or exhibit that will prove the facts described.

    4.    A description with as much detail and precision as possible, and the manner in which the alleged offense was committed.

    5.    A description with as much detail and precision as possible, and the means by which the alleged offense was committed.

As the State indicates, Child was previously furnished with the State's witness list and all of the State's 1200 documents and, as a result, appears to have had access to all material relevant to the State's case against him. The delinquency petition stated with particularity each of the crimes charged, including the dates and locations of the alleged offenses, the crimes charged and the relevant statutory provisions, and the

24

items stolen or moved. Therefore, there would be no question as to the nature and character of the crimes charged.

{34} Child asserts that "simply knowing what was in the State's file was not enough." However, our precedent indicates that access to the state's files normally is enough for the accused to prepare a defense. Other cases have considered similar requests to Child's and have determined that knowledge of the evidence on which the state would rely, the particular acts that were being relied on, and the means, manner, or method were not necessary for the accused to adequately prepare a defense. *Archuleta*, 1970-NMCA-131, ¶ 33 (stating that providing the defendant with the evidence on which the state would rely would require it to plead evidence, which is not necessary); *State v. Coulter*, 1973-NMCA-019, ¶ 9, 84 N.M. 647, 506 P.2d 804 (holding that the defendant was not prejudiced when the state had made available all the information in its files to defense counsel). This is especially true when the state maintains an open file because the child already has access to the entirety of the evidence and the witnesses the state will use against him. *Coulter*, 1973-NMCA-019, ¶ 11. In the present case, Child's request, including that he "needed to know how the State intended to connect all the crimes charged" and the theory of the case, if not within the documents already in Child's possession, would require the State to plead evidence, which is not required to satisfy due process. We fail to see how Child was

25

prejudiced. Child does not allege how he was prejudiced by proceeding to trial with the information contained in the charging documents and provided in discovery. Child was aware of the crimes with which he was charged and had access to all of the State's documents. There was nothing more to be given.

{35} The district court was in the best position to assess the whole record and determined that Child had sufficient information to prepare his defense. *See Archuleta*, 1970-NMCA-131, ¶¶ 33-34. Because Child had access to the entirety of the State's documents and witness list, and the delinquency petition stated with particularity the charges against him, we hold that Child had enough information to prepare his defense in accordance with due process. The district court did not abuse its discretion by denying Child's motion for a bill of particulars. We affirm the district court.

**D.     Child's Motion to Compel the State to Allow a Twelve-Member Jury**

{36} Child filed a motion to compel the State to allow the case to be heard by twelve jurors instead of six. The district court denied the motion to compel. An appellate court reviews issues of statutory interpretation de novo. *Schuster v. State Dep't of Taxation & Revenue*, 2012-NMSC-025, ¶ 9, 283 P.3d 288.

{37} Child argues that, under *State v. Lorenzo P.*, 2011-NMCA-013, ¶ 11, 149 N.M. 373, 249 P.3d 85, he is entitled to a twelve-member jury because an adult facing the

26

same charges would be entitled to a twelve-member jury and that NMSA 1978, Section 32A-2-16(A) (2009) and Section 32A-2-14(A) entitle him to the same rights as an adult. The State argues that, under Section 32A-2-16(A), Child is entitled only to a six-member jury unless he is subject to adult penalties and, because the State did not seek adult penalties, he is not entitled to a twelve-member jury.

{38} "A child . . . is entitled to the same basic rights as an adult, *except as otherwise provided in the Children's Code*[.]" Section 32A-2-14(A) (emphasis added). The relevant section of the Children's Code, Section 32A-2-16(A), specifically provides that, if a "child [is] facing a juvenile disposition[, he] shall be entitled to a six-member jury." If the state has "invoke[d] an adult sentence," the child is entitled to a twelve-member jury. *Id.* While the crimes charged are serious offenses and would entitle an adult to a twelve-member jury, whether the child is entitled to a twelve-member jury is not determined by the charges, but by the state's decision to invoke an adult sentence. *Id.* That is not the case here. The State's petition for delinquency terms Child as a "delinquent child." The jury instructions describe the offenses as a "delinquent act," and the State did not seek an adult sentence. We have stated that we apply the Children's Code as written. *Lorenzo P.*, 2011-NMCA-013, ¶ 21. Section 32A-2-16(A) is a specific circumstance in which the rights of the child are otherwise provided for in the Children's Code. A child is entitled to a six-member

27

jury unless subject to an adult sentence. Child acknowledges this clear language of the statute. Thus, Child was not entitled to a twelve-member jury, and we affirm the district court's denial of his motion to compel.

## III.    CONCLUSION

{39}    We hold that the State is required to present clear and convincing evidence that Child had an above-average ability based on his personal traits and understanding of the situation to waive his rights in order to rebut the presumption of inadmissibility under Section 32A-2-14(F). The State did not meet this burden, thus, Child's statements were inadmissible. We reverse the district court's order denying Child's motion to suppress his statements and affirm the district court's denial of his motion to sever, the motion for a bill of particulars, and the motion to compel a twelve-member jury. This case is remanded for further proceedings in accordance with this Opinion.

{40}    **IT IS SO ORDERED.**


_____

**RODERICK T. KENNEDY, Chief Judge**

**WE CONCUR:**

_____
**JONATHAN B. SUTIN, Judge**

_____
**M. MONICA ZAMORA, Judge**