# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

**Opinion Number:_____**

**Filing Date:  October 15, 2015**

**NO. S-1-SC-34995**

**STATE OF NEW MEXICO,**

> Plaintiff-Petitioner,

**v.**

**DeANGELO M.,**

> Child-Respondent.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Drew D. Tatum, District Judge**

Hector H. Balderas, Attorney General
Kenneth H. Stalter, Assistant Attorney General
Santa Fe, NM

for Petitioner


Robert E. Tangora, L.L.C.
Robert E. Tangora
Santa Fe, NM

for Respondent

**OPINION**

**CHÁVEZ, Justice.**

{1} DeAngelo M. (Child) was thirteen years and eight days old when during a custodial interrogation by three law enforcement officers, he made inculpatory statements regarding a burglary, which connected Child to a murder. Had Child made his statements nine days earlier, his statements would not have been admissible against him in any delinquency proceedings. NMSA 1978, § 32A-2-14(F) (2009). Had Child been fifteen years old at the time of his statement, his statement would be admissible if the prosecution proved by a preponderance of the evidence that Child's statement was elicited after his knowing, intelligent and voluntary waiver of his constitutional and statutory rights. Section 32A-2-14(D), (E); *State v. Martinez*, 1999-NMSC-018, ¶ 14, 127 N.M. 207, 979 P.2d 718. However, because Child was thirteen years old and his statement was given to a person in a position of authority, there is a rebuttable presumption that his statement is inadmissable in any delinquency proceedings. Section 32A-2-14(F).

{2} How does the prosecution rebut this presumption? The Court of Appeals held that the prosecution must prove by clear and convincing evidence, through expert testimony, that "Child had the maturity and intelligence of an average fifteen-year-old child to understand his situation and the rights he possessed." *State v. DeAngelo M.*,

2015-NMCA-019, ¶¶ 21, 23-24, 344 P.3d 1019. The Court of Appeals reversed the district court's denial of the motion to suppress because the prosecution did not meet this burden and remanded for a new trial. *See id.* ¶¶ 23, 24. We granted the State's petition for certiorari, *State v. DeAngelo M.*, 2015-NMCERT-002, to consider the following issues: (1) whether the Court of Appeals erred by holding that the State can only rebut the presumption of inadmissibility by showing that the thirteen- or fourteen-year-old child has the intellectual capacity of an average fifteen-year-old; (2) whether the Court of Appeals erred by holding that the State must rebut the presumption of inadmissibility by clear and convincing evidence rather than by a preponderance of the evidence; and (3) whether the Court of Appeals erred by holding that the State can only rebut the presumption of inadmissibility through expert testimony.

{3} We hold that Section 32A-2-14(F) requires the State to prove by clear and convincing evidence that at the time a thirteen- or fourteen-year-old child makes a statement, confession, or admission to a person in a position of authority, the child (1) was warned of his constitutional and statutory rights, and (2) knowingly, intelligently, and voluntarily waived each right. To prove the second element, the recording of the custodial interrogation which resulted in the statement, confession,

2

or admission must prove clearly and convincingly that the child's answer to open-ended questions demonstrated that the thirteen- or fourteen-year-old child has the maturity to understand each of his or her constitutional and statutory rights and the force of will to insist on exercising those rights. Expert testimony may assist the fact-finder in understanding the evidence or determining the facts necessary to satisfy this requirement, but it is not essential. We conclude that the evidence in this case does not prove that Child knowingly, intelligently, and voluntarily waived each right. Therefore, his statement should be suppressed.

**I.      Section 32A-2-14(F) requires the State to rebut the presumption of inadmissibility by clear and convincing evidence**

{4}      The Fifth Amendment to the United States Constitution provides individuals a constitutional right against self-incrimination by providing that an individual shall not "be compelled in any criminal case to be a witness against himself [or herself]." U.S. Const. amend. V. In *Miranda v. Arizona*, the United States Supreme Court articulated warnings that law enforcement must give to a suspect before the suspect can be subjected to a custodial interrogation without compromising his or her privilege against self-incrimination. 384 U.S. 436, 479 (1966). The Court explained that:

Prior to any questioning, the person must be warned that he [or she] has

3

> a right to remain silent, that any statement he [or she] does make may be used as evidence against him [or her], and that he [or she] has a right to the presence of an attorney, either retained or appointed.

*Id.* at 444. "After such warnings have been given, and such opportunity afforded him [or her], the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement." *Id.* at 479. "Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he [or she] wishes to remain silent, the interrogation must cease." *Id.* at 473-74.

{5} "[W]hile the federal constitution provides a minimum level of protection below which the states may not descend, states remain free to provide greater protection." *State v. Javier M.*, 2001-NMSC-030, ¶ 24, 131 N.M. 1, 33 P.3d 1 (alteration in original) (internal quotation marks and citation omitted). "Hence, it is completely within the Legislature's authority to provide greater statutory protection than accorded under the federal Constitution." *Id.* The New Mexico Legislature did just that by its enactment of the Delinquency Act, NMSA 1978, §§ 32A-2-1 to -33(1993, as amended through 2009).

{6} The Delinquency Act provides children with "greater protections than those constitutionally afforded [to] adults with regard to the admissibility of a child's

4

statements or confessions." *State v. Adam J.*, 2003-NMCA-080, ¶ 3, 133 N.M. 815, 70 P.3d 805 (citing § 32A-2-14(C)-(G)). Relevant to our inquiry in this case, Section 32A-2-14(F) provides:

> Notwithstanding any other provision to the contrary, no confessions, statements or admissions may be introduced against a child under the age of thirteen years on the allegations of the petition. There is a rebuttable presumption that any confessions, statements or admissions made by a child thirteen or fourteen years old to a person in a position of authority are inadmissible.

{7}   What is not clear from the text is how the prosecution is expected to rebut the presumption. What is the prosecution's burden of proof? What evidence will overcome the presumption? This case requires us to construe Section 32A-2-14(F). "Statutory interpretation is a question of law, which we review de novo." *State ex rel. Children, Youth & Families Dep't v. Djamila B.* (*In re Mahdjid B.*), 2015-NMSC-003, ¶ 12, 342 P.3d 698, 702 (internal quotation marks and citation omitted). "We look first to the plain language of the statute." *N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 20, 142 N.M. 533, 168 P.3d 105. "However, we look not only to the language used in the statute, but also to the purpose to be achieved and the wrong to be remedied." *Djamila B.*, 2015-NMSC-003, ¶ 25 (internal quotation marks and citation omitted). "In doing so, we examine the plain language of the statute as well as the context in which it was promulgated,

5

including the history of the statute and the object and purpose the Legislature sought to accomplish." *State v. Office of the Pub. Def. ex rel. Muqqddin*, 2012-NMSC-029, ¶ 13, 285 P.3d 622 (internal quotation marks and citation omitted).

{8} One of the express purposes of the Delinquency Act is "to remove from children committing delinquent acts the adult consequences of criminal behavior, but to still hold children committing delinquent acts accountable for their actions to the extent of the child's age, education, mental and physical condition, background and all other relevant factors." Section 32A-2-2(A). This express purpose is consistent with the overarching legislative goals of the Children's Code, NMSA 1978, §§ 32A-1-1 to -24-5 (1993, as amended through 2009), which ensures that children's constitutional and statutory rights are recognized and enforced:

> The Children's Code shall be interpreted and construed to effectuate the following legislative purposes:
>
> A.    first to provide for the care, protection and wholesome mental and physical development of children coming within the provisions of the Children's Code . . . ; [and]
>
> B.    to provide judicial and other procedures through which the provisions of the Children's Code are executed and enforced and in which the parties are assured a fair hearing and their constitutional and other legal rights are recognized and enforced . . . .

Section 32A-1-3(A)-(B).

{9}     Prior to 1993 no confession, statements or admissions made by a child under the age of fifteen could be introduced against the child.  NMSA 1978, § 32-1-27(F) (1992).  The legislative rationale for categorically excluding such statements was because

> [c]hildren of tender years lack the maturity to understand constitutional rights and the force of will to assert those constitutional rights.  Children are encouraged to respect and obey adults and should not be expected to assert their constitutional rights even under the most perfunctory questioning by any adult, particularly an adult of authority.  By prohibiting the admission of statements made by children under age fifteen, Section 32-1-27(F) encourages children to freely converse with adults without fear that their statements will be used against them at a later date.  In contrast, an adult or a child over age fifteen is unlikely to make an involuntary statement in a noncustodial, noncoercive atmosphere or after receiving *Miranda* warnings.  The additional protection that Section 32-1-27(F) grants children under age fifteen helps to balance these differences in sophistication.

*State v. Jonathan M.*, 1990-NMSC-046, ¶ 8, 109 N.M. 789, 791 P.2d 64.

{10}    However, in 1993 the Legislature revised the Children's Code, and along with it replaced Section 32-1-27 with Section 32A-2-14(F).  Rather than excluding from evidence all statements made by children under fifteen, the Legislature decided to exclude from evidence only statements made by children younger than thirteen years old.  *See* § 32A-2-14(F).  The Legislature chose to treat thirteen- and fourteen-year-old children differently than children older than fourteen or younger than thirteen.

7

*See* NMSA 1978, § 32A-2-14(F) (1993); *State v. Jade G.*, 2007-NMSC-010, ¶ 16, 141 N.M. 284, 154 P.3d 659 ("The fact that the Legislature drew a distinction between children [of different ages] demonstrates its clear intent to treat the . . . groups differently, and the plain language of this statute explains the nature of that difference.").

{11} By categorizing children into different age groups, the Legislature distinguished between the different age groups' intellectual and developmental capacities to knowingly, intelligently, and voluntarily waive their *Miranda* and statutory rights. *See Adam J.*, 2003-NMCA-080, ¶ 20 (Alarid, J., specially concurring). For example, although Section 32A-2-14 provides greater protections for all children than does *Miranda*, the Legislature treats children fifteen and older as having the intellectual and developmental capacity of adults to waive their constitutional and statutory rights. *See Jonathan M.*, 1990-NMSC-046, ¶ 8 (explaining that like adults, children over fifteen are unlikely to make involuntary statements after *Miranda* warnings due to their higher level of sophistication).

{12} On the opposite end of the age groups are children younger than thirteen. Unlike children fifteen and older, the Legislature precludes the introduction of confessions, statements, or admissions against a child under the age of thirteen on the

8

allegations of a delinquency petition, regardless of the context in which or to whom the statements were made. Section 32A-2-14(F); *see Jade G.*, 2007-NMSC-010, ¶ 16. The Legislature has made the policy decision that children younger than thirteen lack the maturity to understand their constitutional and statutory rights and the force of will to assert those rights. Accordingly, Section 32A-2-14(F) provides no exceptions permitting "the admission of statements made by children under thirteen." *Jade G.*, 2007-NMSC-010, ¶ 16.

{13} By creating fundamentally distinct protections for children fifteen and older and for children younger than thirteen, the Legislature intended to " 'draw [a] line between children who are too young to waive their rights and those who are not.' " *Adam J.*, 2003-NMCA-080, ¶ 8 (citations omitted). The Legislature chose not to treat thirteen- and fourteen-year-old children categorically as belonging at one end or the other of this childhood developmental spectrum. Some may lack the maturity to understand their constitutional and statutory rights and the force of will to assert those rights, and some may not.

{14} To address this uncertainty, under Section 32A-2-14(F) any statement, admission, or confession of a child thirteen or fourteen years old is presumed to be inadmissible unless the State rebuts the presumption. The State's burden of proof is

9

not defined in the statute; therefore, it is our responsibility to make that determination. *State v. Valdez* (*In re Valdez*), 1975-NMSC-050, ¶ 12, 88 N.M. 338, 540 P.2d 818 (citing *Woodby v. Immigration Serv.*, 385 U.S. 276, 284 (1966)). The State argues that it should only have to prove "by a preponderance of the evidence, that [Child] was advised of [his] rights and knowingly, intelligently, and voluntarily waived those rights." The State maintains that it can rebut the presumption of inadmissibility when "the district court determines that the child made a knowing, intelligent, and voluntary waiver of rights" by utilizing the totality of circumstances factors listed under Section 32A-2-14(E). If we were to agree with the State's argument, we would in essence be treating thirteen- and fourteen-year-old children the same as fifteen-year-old children. We conclude that the Legislature did not intend this result. The purpose of a burden of proof is to " 'instruct the factfinder concerning the degree of confidence our society thinks he [or she] should have in the correctness of factual conclusions for a particular type of adjudication.' " *Addington v. Texas*, 441 U.S. 418, 423 (1979) (quoting *In re Winship*, 397 U.S. 358, 370 (1970) (Harlan, J., concurring)). The legislative history of Section 32A-2-14(F) and the importance of protecting children younger than fifteen years of age from unknowing or involuntary waivers of their rights leads us to conclude that clear and convincing

evidence is the proper burden of proof for rebutting the presumption of inadmissibility under Section 32A-2-14(F). *DeAngelo M.*, 2015-NMCA-019, ¶¶ 14-16.

**II.** **To overcome the presumption, the State must prove by clear and convincing evidence that the thirteen- or fourteen-year-old child had the maturity to understand his or her constitutional and statutory rights and the force of will to invoke such rights**

{15} We next address what clear and convincing evidence must be introduced by the State to rebut the presumption of inadmissibility under Section 32A-2-14(F). The State maintains that evidence relating to the Section 32A-2-14(E) factors should suffice. Section 32A-2-14(E) provides:

> In determining whether the child knowingly, intelligently and voluntarily waived the child's rights, the court shall consider the following factors:
>
> (1) the age and education of the respondent;
>
> (2) whether the respondent is in custody;
>
> (3) the manner in which the respondent was advised of the respondent's rights;
>
> (4) the length of questioning and circumstances under which the respondent was questioned;
>
> (5) the condition of the quarters where the respondent was being kept at the time of being questioned;

(6)    the time of day and the treatment of the respondent at the time of being questioned;

(7)    the mental and physical condition of the respondent at the time of being questioned; and

(8)    whether the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

{16}    The Court of Appeals held generally that "the state must present evidence as to both the benchmark to be reached and the qualities of the child that meet it and that the thirteen-year-old child possessed personal faculties equivalent to what is required to find an ability to waive rights that would satisfy an adult standard for waiver." *DeAngelo M.*, 2015-NMCA-019, ¶ 13. The Court of Appeals determined that lay witnesses lack the expertise to determine whether a thirteen- or fourteen-year-old child has the intellectual characteristics that would render him or her the equal of an average fifteen-year-old in understanding and appreciating the significance of a *Miranda* waiver. *See id.* Consequently, the Court of Appeals would require expert testimony, although it did not identify the type of expertise required. *Id.* ¶¶ 13-15.

{17}    Although we do not agree entirely with the Court of Appeals, we conclude that the Legislature intended a different analysis by drawing a distinction between fifteen-year-old children and thirteen- and fourteen-year-old children, although the Subsection E factors are also relevant. We hold that the State must first prove by

12

clear and convincing evidence that at the time the thirteen- or fourteen-year-old child made his or her statement to a person in a position of authority, the child had the maturity to understand his or her constitutional and statutory rights and the force of will to assert those rights. It is not necessary to prove that the child had the maturity and intellectual capacity of an average fifteen-year-old child. How such a determination could be made is not evident from the Court of Appeals' opinion.

{18} The Court of Appeals stated that expert testimony would be required. However, Child did not introduce evidence to the trial court to establish what kind of expert might be able to derive an opinion about children's capacity to waive their *Miranda* and statutory warnings. In his brief in chief Child cited Thomas Grisso, *Adolescents' Decision Making: A Developmental Perspective on Constitutional Provisions in Delinquency Cases*, 32 New Eng. J. on Crim. & Civ. Confinement 3, 12 (2006) as an example of potentially useful expert testimony.[1] However, without

---

[1]*See also* Thomas Grisso, *Instruments for Assessing Understanding & Appreciation of Miranda Rights* (1998); Thomas Grisso, *Juveniles' Capacities to Waive* Miranda *Rights: An Empirical Analysis*, 68 Cal. L. Rev. 1134 (1980); I. Bruce Frumkin, et. al., *The Grisso Tests for Assessing Understanding and Appreciation of* Miranda *Warnings with a Forensic Sample*, 30 Behav. Sci. L. 673 (2012). In 2012, Dr. Thomas Grisso published *The Miranda Rights Comprehension Instruments* (*MRCI*), which provides instruments that have been updated since the publication of his original *Instruments for Assessing Understanding & Appreciation of Miranda Rights*.

a record that establishes the validity and reliability of the expert's methodology, we are unable to make an informed decision about the utility of such expert testimony. The undeveloped record before this Court prevents us from categorically affirming the Court of Appeals' broad holding, which would require expert testimony and evaluations of the child, most likely by mental health professionals, in all cases involving statements made by thirteen- or fourteen-year-old children to persons in a position of authority.

{19}     Absent an evaluation by an expert, interrogators in a position of authority can preserve the evidence needed by the State to rebut the presumption of inadmissibility for thirteen- and fourteen-year-old children under Section 32A-2-14(F). NMSA 1978, Section 29-1-16 (2006) requires law enforcement officers, with limited exceptions, to electronically video and audio record their custodial interrogations. *See, e.g.*, *State v. Spriggs-Gore*, 2003-NMCA-046, ¶¶ 14-15, 133 N.M. 479, 64 P.3d 506 (noting that the interrogating law enforcement officer recorded and transcribed "approximately five and one-half hours of conversation with Defendant"). In order to obtain the clear and convincing evidence needed to rebut the presumption of inadmissibility, the interrogator who is in a position of authority must first adequately advise the thirteen- or fourteen-year-old child of his or her *Miranda* and statutory

rights and then invite the child to explain, on the record, his or her actual comprehension and appreciation of each *Miranda* warning. This could be done by having the child explain in his or her own words—without suggestions by the interrogator—what each of the rights means to the child. An effective inquiry into a thirteen- or fourteen-year-old child's actual comprehension and appreciation of each right under *Miranda* requires more than simple "yes" answers or a signed *Miranda* notification and consent form on the child's part, when the child may or may not be able to fully process a formal recitation of the four warnings. It is through the child's articulation of his or her understanding that a fact-finder could assess whether the child appreciated the function and significance of each right in the context of not only police questioning, but in future court proceedings. A court deciding a motion to suppress pursuant to Section 32A-2-14(F) would be able to assess the child's actual understanding of the *Miranda* rights and whether the child made a rational choice based on the child's appreciation of the consequences of his or her decision from evidence developed at the time of his or her interrogation. Ultimately, a district court judge should suppress any statement made by a thirteen- or fourteen-year-old child unless the judge finds that the child clearly and convincingly demonstrated his or her maturity to understand his or her constitutional and statutory rights and possessed the

15

force of will to assert those rights.

## III. The agents failed to produce sufficient evidence to rebut the presumption

{20} Child was born on July 15, 1997. On July 26, 2010, the State charged Child with one count of residential burglary contrary to NMSA 1978, Sections 30-16-3(A) (1963) and 32A-2-3(A) (2009); one count of tampering with evidence contrary to NMSA 1978, Sections 30-22-5 (2003) and 32A-2-3(A); and one count of larceny of over $250 (but not more than $500) contrary to NMSA 1978, Sections 30-16-1(C) (2006) and 32A-2-3(A). Around noon on July 23, 2010, eight days after Child's thirteenth birthday, Agent Daniel Blair transported Child and Child's mother to the Roosevelt County Law Enforcement Complex to interrogate Child. Child's mother was present during the entire interrogation.

{21} Agents Dan Aguilar and Daniel Blair, who are investigators with the District Attorney's office, and Detective John Mondragon, who is a detective with the Portales Police Department, interrogated Child. When Agent Blair began advising Child of his *Miranda* rights, Agent Blair appeared to agree with the Legislature's presumption that a thirteen-year-old child does not have the maturity to understand his or her *Miranda* rights when he stated "[y]ou have to be advised of your rights pursuant to rule 32A-2-14 of the Children's Code Rules of Procedure and the

16

constitution. You probably don't understand that because I don't understand part of that but it's a rule that we gotta do. Okay?"

{22} The following exchange occurred between Agent Blair and Child as Agent Blair attempted to read and explain to Child the right to remain silent:

| Agent Blair: | It tells us—you have the right to remain silent. You don't have anything—if you . . . you do not have to say anything if you do not want to. I've been up for a little while so I'm not reading properly. Like I'm reading at a second grade level—just tell me. You can probably read better. Do you understand that? |
|---|---|
| Child: | Kind of. Yeah. |
| Agent Blair: | What do you think that means? |
| Child: | Don't talk on your own behalf. |
| Agent Blair: | Or you don't have to talk to us if you don't want to and your mom will explain that. |

Agent Blair initially and correctly invited Child to explain in his own words what Child understood the right to remain silent means rather than accept Child's unclear response of "Kind of. Yeah." Apparently dissatisfied with Child's explanation of his right to remain silent, Agent Blair simply corrected Child without inviting Child to further explain his actual comprehension and appreciation of the right for a second time. It is not clear from this exchange whether Child fully comprehended his right

17

to remain silent. Agent Blair also erroneously suggested to Child that his mother could counsel Child as an equivalent substitute to an attorney. In any event, during the entire exchange regarding Child's right to remain silent, it was never developed whether Child was able to use the information provided by the warning, grasp the significance of his right to remain silent, and weigh his options and the consequences of his decisions.

{23} Agents Blair and Aguilar hurriedly and equivocally warned Child of his remaining rights.

Agent Blair: Anything you say can be used against you in court. Okay on TV when they read these—they read them to adults and that means that they've arrested them but that's not happening here okay? That's, that's why I didn't want to—uh—do you understand what that means? Okay, you can talk to your parents, your guardian, and an attorney. You got your parent/guardian right here with you um. [Y]ou have the right to have you [sic] parent/guardian parent present during any questioning. If you can not afford a lawyer, one may be appointed for you before any questioning. These are the ones on TV. Um, if you decide to answer questions um, without an attorney, you can—you still have the right to stop answering questions anytime. You have the right to stop answering questions any time till you talk to an attorney. Now you understand what I just said?

Child: Not really.

| | | |
|---|---|---|
| Agent Blair: | You didn't understand those? Which ones? |
| Child: | —I think I understand that you can talk to the Judge—no, you can talk without an attorney. And then you can stop if it's just like—too getting out of hand. You can stop. |
| Agent Blair: | —You're right on the— |
| Child: | —answering questions. Until you get an attorney. |
| Agent Blair: | You're absolutely right. |
| Agent Aguilar: | —Correct. |
| Child: | Okay. |

This exchange failed to capture Child's actual comprehension and appreciation of his remaining rights. Agent Blair's description of these rights can only be characterized as confusing. Persons in a position of authority must advise thirteen- and fourteen-year-old children of their constitutional and statutory rights in a clear and intelligible manner if they want to rebut the presumption under Section 32A-2-14(F). The manner in which a child is informed of his or her constitutional and statutory rights is relevant to whether the child knowingly waived his or her rights. In this case, it is impossible to ascertain Child's comprehension and appreciation of his rights without a clear and intelligible advisement of such rights. First, the manner in which Agent Blair advised Child of the three remaining *Miranda* warnings, which included

19

mentioning rights read on television, suggesting that the rights only apply when people are arrested, and explaining that Child was not under arrest, was at best confusing and at worst clearly erroneous. Thirteen- or fourteen-year-old children possess these constitutional and statutory rights whether or not they are under arrest. It is not surprising that Child responded that he did "[n]ot really" understand his rights as they were presented by Agent Blair.

{24}    Second, Agent Blair asked Child to identify which warnings Child did not understand. In response, the interrogation transcript appears to indicate that Child confused the right to remain silent with the right to an attorney. Child explained that he thought he understood that he had a right to talk without an attorney, but that Child could then stop the interrogation only if Child thought the interrogation was "getting out of hand" and not answer the questions until he obtained an attorney. Agents Blair and Aguilar simply told Child that he was absolutely correct and moved on. Given this exchange, we are left without any clear indication of whether Child actually comprehended and appreciated each of the *Miranda* warnings.

{25}    As he read Child his *Miranda* rights, Agent Blair also presented Child with a notification and waiver form listing those rights, and Child wrote his initials next to each right listed on the form. Both Child and his mother signed the notification and

waiver form.

{26}    Child's lack of understanding of his rights and his inability to invoke his rights was also demonstrated by what occurred during the interrogation after the forms were signed. Child initially admitted that he broke into the victim's home and stole personal items identified by Agent Blair that belonged to the victim. However, Child denied taking a gun or any ammunition from the victim's home, and also denied involvement in the victim's shooting. When Agent Blair told Child that he believed Child had shot and killed the victim, Child denied killing the victim, became very upset, and started to cry. Child eventually told Agent Blair "I don't want to talk anymore." Agents Blair and Aguilar acknowledged and confirmed Child's invocation of his right to remain silent. Agent Blair specifically responded, "You don't want to talk anymore? Okay," while Agent Aguilar stated, "We're done. Then." The interrogation stopped while Agents Blair and Aguilar collected a saliva swab sample from Child and Child used the restroom.

{27}    Following the break, Agents Blair and Aguilar reinitiated the interrogation, reminding Child that he could ask to stop any further questions if he did not want to talk.

> Agent Aguilar:    DeAngelo we want to—we just, I just want to ask
>                   you a few questions okay? You admitted that you

went into the house and took some things and stuff like that—that's all we want to talk to you about okay? We don't want to talk to you about a gun or we don't want to talk to you about any of that other stuff. Okay? Is that alright?

Child:                    (inaudible response)

Agent Aguilar:      Okay, um, with that in mind—you just keep in mind this, you can do exactly what you did the last time, okay? When you've had enough and you don't want to talk to us anymore, you just tell us you don't want to talk anymore. Okay? Is that alright? (inaudible response) Okay, now, when, when you into uh . . . their house on Sunday—you remember? Yes? Sunday or whatever day—over the weekend. While they were gone. And the things that you took, where did you hide them till you got rid of them? Or did you get rid of everything?

In response, Child provided more details about the specific circumstances of how he stole certain items from the victim's home. Resuming the interrogation of Child after Child said he did not want to talk does not scrupulously honor the invocation of an individual's right to remain silent that the law requires. *State v. King*, 2013-NMSC-014, ¶ 8, 300 P.3d 732. "The moment that the unambiguous statement is made, the interrogator must 'scrupulously honor' the suspect's or person's right by ceasing the interrogation." *Id.* When Child continued to answer questions after stating that he did not want to talk, this provided additional evidence that Child did not possess

22

either the maturity to understand his rights or the force of will to assert those rights.

{28} Following this interview, Child's charges were amended to (1) one count of first degree murder contrary to NMSA 1978, Sections 30-2-1(A)(1) (1994) and 32A-2-3; (2) one count of aggravated burglary contrary to NMSA 1978, Sections 30-16-4(B) (1963) and 32A-2-3; (3) two counts of tampering with evidence contrary to Sections 30-22-5 and 32A-2-3; and (4) one count of larceny over $250 (but not more than $500) contrary to Sections 30-16-1 and 32A-2-3. Prior to trial, Child timely filed a motion to suppress the inculpatory statements he made during the July 23, 2010 interview, arguing that the State failed to adequately rebut the presumption that his statements were inadmissible pursuant to Section 32A-2-14(F).

{29} During the suppression hearing, the State presented testimony from Agents Blair and Aguilar and Child's teacher at the detention center where Child was held. The district court found their testimony persuasive, noting in its decision letter that Agents Blair and Aguilar both testified that "based on their experience in interviewing children of similar age, [Child] was articulate, inquisitive and fully aware of his constitutional rights, and [Child] appeared to be more mature and intelligent than children of his age." The district court noted that Child's teacher testified that Child was "well-read, inquisitive and readily corrects the grammar and

23

vocabulary of other juveniles detained in the Curry County Juvenile Detention Center, and in his opinion, [Child] is more intelligent than the average juvenile detainees in his age group." The district court denied Child's motion and determined that Child "knowingly, voluntarily and intelligently waived his constitutional rights prior to speaking with law enforcement, and, as a result, the State has overcome the rebuttable presumption that the statements of [Child] are inadmissible."

{30}     On this record, we conclude that the State failed to meet the burden of proof necessary to overcome the statutory presumption against admitting Child's statements. The testimony of the interrogating officers is not the type of evidence that could overcome this presumption. What must be considered is the evidence from the recorded interview, not the officers' characterization of Child's maturity to understand and invoke his constitutional and statutory rights. The State's evidence concerning whether Child reads books, converses with adults, corrects other children's vocabulary and grammar, and seems more intelligent and mature than other children is only indirectly related to whether Child actually comprehended and appreciated each *Miranda* warning that he was given. While such evidence is relevant, the court must first determine whether at the time of the interrogation the child exhibited the maturity to understand each of his or her constitutional and

statutory rights and possessed the force of will to invoke such rights. Absent clear and convincing evidence which proves that Child understood each right, Child's school performance is not material evidence. In this case, the transcript of the interrogation falls far short of establishing any of the required showings. Accordingly, the district court erred in denying Child's motion to suppress because the State did not meet its burden of rebutting the presumption of inadmissibility under Section 32A-2-14(F) by clear and convincing evidence.

**IV.    Conclusion**

{31}    For the foregoing reasons, we affirm the Court of Appeals on different grounds and reverse the district court's denial of Child's motion to suppress. We remand for further proceedings in accordance with this opinion.

{32}    **IT IS SO ORDERED.**


_____

**EDWARD L. CHÁVEZ, Justice**


**WE CONCUR:**


_____

**BARBARA J. VIGIL, Chief Justice**

25

_____

**PETRA JIMENEZ MAES, Justice**


_____

**RICHARD C. BOSSON, Justice**


_____

**CHARLES W. DANIELS, Justice**

26